**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:22-CV-81908-AMC**

**MARC M. DULCIO,**

>   Plaintiff,

v.

**ENVIRONMENTAL PROTECTION**
**AGENCY,** *et al.,*

>   Defendants.

_____/

FILED BY _____ D.C.

JAN 03 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## AMENDED COMPLAINT I

**COMES NOW** the Plaintiff, Marc M. Dulcio, representing himself as a *Pro Se* litigant, sue the Defendants; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, SHAWN HAMILTON, LATESHEE M. DANIELS, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION WASTE SITE CLEAN UP SECTION, THERESA PEPE, BRECK DALTON, AARON COHEN, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION OFFICE OF GENERAL COUNSEL, GARY BALLARD, STACI KICHLER, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE SOUTH EAST DISTRICT, JASON ANDREOTTA, SIRENA DAVILA, NORVA BLANDIN, ALANNAH IRWIN, ROMINA LANCELLOTTI, JUSTIN STARK, ARCADIS U.S., INC., GPI PROPERTIES, INC., and EARTH TECH DRILLING, INC., as the result of violations of Federal, State, and Local Laws.

CASE NO. **9:22-cv-81908-AMC**

## **ATTACHED**

### **Full List of Defendants**

### **(1). ENVIRONMENTAL PROTECTION AGENCY;**

### **(2). FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION;**

(2)(1). SHAWN HAMILTON (Individual Capacity)

(2)(2). LATESHEE M. DANIELS (Individual Capacity)

### **(2)(3). Florida Department of Environmental Protection Waste Site Cleanup Section**

(2)(3)(1). THERESA PEPE (Individual Capacity)

(2)(3)(2). BRECK DALTON (Individual Capacity)

(2)(3)(3). AARON COHEN (Individual Capacity)

### **(2)(4). Florida Department of Environmental Protection Office of General Counsel**

(2)(4)(1). GARY BALLARD (Individual Capacity)

(2)(4)(2). STACI KICHLER (Individual Capacity)

### **(2)(5) Florida Department of Environmental Protection of the Southeast District**

(2)(5)(1). JASON ANDREOTTA (Individual Capacity)

(2)(5)(2). SIRENA DAVILA (Individual Capacity)

(2)(5)(3). NORVA BLANDIN (Individual Capacity)

(2)(5)(4). ALANNAH IRWIN (Individual Capacity)

(2)(5)(5). ROMINA LANCELLOTTI (Individual Capacity)

(2)(5)(6). JUSTIN STARK (Individual Capacity)

### **Government Contractors and Subcontractors**

(2)(6). ARACDIS U.S.,INC.;

(2)(6)(1). GPI PROPERTIES, INC., d/b/a Groundwater Protection;

(2)(6)(2). EARTH TECH DRILLING, INC.;

CASE NO. **9:22-cv-81908-AMC**

**Address List:**

**United States Environmental Protection Agency**

Mail Code 1101A

1200 Pennsylvania Avenue NW

Washington, DC 20460

**Florida Department of Environmental Protection**

3900 Commonwealth Blvd

Tallahassee, FL 332399

**Florida Department of Environmental Protection Waste Site Cleanup Section**

2600 Blair Stone Road, MS 3588

Tallahassee, FL 32399

**Florida Department of Environmental Protection Office of General Counsel**

3900 Commonwealth Boulevard

Tallahassee, Florida 32399-3000

**Florida Department of Environmental Protection of the Southeast District**

3301 Gun Club Road.

West Palm Beach, FL 33406

**Arcadis U.S. INC.**

1500 Gateway Blvd, Suite 200

Boynton Beach, FL 33426

**GPI PROPERTIES, INC., d/b/a Groundwater Protection**

2300 SILVER STAR RD

ORLANDO, FL 32804

**EARTH TECH DRILLING, INC**

2703 NW 19th St,

Pompano Beach, FL 33069

## TABLE OF CONTENTS

*Jurisdiction & Venue* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*References* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4 - 9*

*Chronology of Factual Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9 - 24*

*COUNT I & II - DECLARATORY RELIEF* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24 - 27*

*COUNT III – NEGLIGENCE PER SE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *27 - 31*

*COUNT IV - ACTION FOR DAMAGES (Chapter 376 Fla. Stat)* . . . . . . . . . . . . . . . . . . *31 - 33*

*COUNT V - DEPRIVATION OF RIGHTS (Amendments (I))* . . . . . . . . . . . . . . . . . . . . . . *33 - 35*

*COUNT VI - DEFAMATION (Libel) PER SE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *35 - 37*

*COUNT VII - FRADULANT CONCEALMENT* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *38 - 41*

*COUNT VIII - CONSPIRACY TO INTERFERE w/ CIVIL RIGHTS* . . . . . . . . . . . . . . . . *41 - 47*

*COUNT VIV - ACTION FOR NEGLECT TO PREVENT* . . . . . . . . . . . . . . . . . . . . . . . . . *47 - 49*

*COUNT X - DEPRIVATION OF RIGHTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *50 - 54*

*COUNT XI - FLORIDA RICO ACT* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *54 - 60*

*COUNT XII – ACTION FOR TREBLE DAMAGES (18 U.S.C. 1964)* . . . . . . . . . . . . . . . *60 - 61*

*COUNT XIII - ACTION FOR CORRECTIVE ACTION* . . . . . . . . . . . . . . . . . . . . . . . . . . *61 - 67*

*SUMMARY OF LOSSES/DAMAGES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *67 - 68*

*PRAYER FOR RELIEF* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *69*

## JURISDICTION & VENUE

**1.**     This Court has jurisdiction pursuant to *28 U.S.C. § 1331* as this is a Civil Rights Claim under *42 U.S.C § 1983, 42 U.S.C § 1988*; and *28 U.S.C. § 1367*, which gives the district courts supplemental jurisdiction over state law claims. Venue is proper in this judicial district under *28 U.S.C. § 89(c)* as the events that gave rise to this Complaint occurred in this District. Venue is further made proper in Palm Beach County, Florida as the incident(s)/act(s)/omission(s) occurred and accrued in Palm Beach County, and Defendants operate business and/or a governmental agency and/or reside and/or work in Palm Beach County, Florida. This is an action seeking damages in excess of $100,000 exclusive of costs, and interest.

## REFERENCES

**A.)**     FDEP_BaseSite/"INITIAL SITE ASSESSMENT WORK PLAN"

**B.)**     FDEP_BaseSite/"B. LINN COMMENTS SITE ASSESSMENT WORK PLAN"

**C.)**     FDEP_BaseSite/"SITE ASSESSMENT REPORT"

**D.)**     FDEP_BaseSite/"FDEP DALTON - SITE ASSESSMENT REPORT"

**E.)**     FDEP_BaseSite/"SUPPLEMENTAL SITE ASSESSMENT REPORT"

**F.)**     FDEP_BaseSite/"SUPPLEMENTAL ASSESSMENT REPORT"

**G.)**     FDEP_BaseSite/"FDEP DALTON-SUPPLEMENTAL SITE ......"

**H.)**     FDEP_BaseSite/"ATTEMPT TO CONDUCT INSPECTION...."

**I.)**     FDEP_BaseSite/"SITE PHOTOS"

"**FDEP_BaseSite**"
*https://prodenv.dep.state.fl.us/DepNexus/public/electronicdocuments/ERIC_5194/facility!search*

## PARTIES

2.      **Plaintiff(1)**, Marc M. Dulcio (hereinafter, "**Mr. Dulcio**"), at all times material hereto, **Mr. Dulcio** was an individual residing in Palm Beach, Florida and is *sui juris*, **Mr. Dulcio** is the single member owner of Warranty Repair Experts, LLC (hereinafter, "WRX") d/b/a New Lifestyle Cleaners (hereinafter, "**LSC**") which is properly registered and domiciled in Florida. **Mr. Dulcio** operating as the Manager/Operating Manager of WRX, transferred all rights, interests and cause of actions to himself, in his individual/personal capacity. **Mr. Dulcio** also performed a business conversion *(Pursuant to F.S. 605.1045)* of his LLC to a Sole proprietorship exposing **Mr. Dulcio** to personal liability, and further enabling Mr. Dulcio to pursue this matter in his individual and/or personal capacity as a "Pro SE" litigant (*pursuant to 28 U.S.C. § 1654*).

### Defendant(s) of the "United States Environmental Protection Agency"

3.      **Defendant(1)**, *United States Environmental Protection Agency* (As an Agency) (hereinafter, "**EPA**"); has a duty to protect human health and the environment, the **EPA** have several offices throughout the state of Florida, including the Southern District of Florida.

### Defendant(s) of the "Florida Department of Environmental Protection"

4.      **Defendant(2)**, *Florida Department of Environmental Protection* (As an Agency) (hereinafter, "**FDEP**"); The Department is the administrative agency of the State of Florida having the power and duty to protect Florida's air and water resources and to administer and enforce the provisions of Chapter 403 & 376 Fla. Stat., and the rules promulgated thereunder in Fla. Admin. Code Title 62. The FDEP is located at 3900 Commonwealth Boulevard, Tallahassee Florida with a zip code of 32399.

**The FDEP is *respondent superior* for defendant(s);**

**Defendant(2)(1)**, *SHAWN HAMILTON* (hereinafter, "**Secretary1**"), is employed with the **FDEP** as a Deputy Secretary, and at all times material hereto, was "operating under the color of law", and whose duties were to provide statewide guidance on sensitive environmental justice issues and was appointed as the principal state liaison for the **EPA**'s Office of Environmental Justice.

**Defendant(2)(2)**, *LATESHEE M. DANIELS* (hereinafter, "**FDEP-SECRETA-RY**") is employed with the **FDEP** as an Administrative Secretary, and at all times material hereto, was "operating under the color of law", and who is responsible for providing high-end clerical support for the officials at the **FDEP** office located in Tallahassee, FL.

**Defendant(2)(3)**, ***FDEP*** *Waste Site Cleanup Section* (As an Agency) (hereinafter, "**WSCS**") is a sub-division of the **FDEP** operating with all the same powers and duties of the **FDEP**, and at all times material hereto, conducts business, and has an office located at *2600 Blair Stone Road.* in Tallahassee, Florida with a zip code of 32301.

**The WSCS is *respondent superior for* defendant(s);**

5.       **Defendant(2)(3)(1)**, *THERESA PEPE* (hereinafter, "**ContractManager1**") is employed with the **WSCS** as a Contract Manager with a Florida Certified Contract Manager Certification *(#4547-21122),* and at all times material hereto, was "operating under the color of law", and who duties were to oversee monitor and provide guidance to contracts, and contractors.

**Defendant(2)(3)(2)**, *BRECK DALTON* (hereinafter, "**ProgramPG1**"), is employed with the **WSCS** under the Waste Site Cleanup Section as a Professional Geologist, at all times material hereto, was "operating under the color of law", and who duties were to aide **ContractManager1** with site characterization and providing technical assistance to contractors.. *Notable mention: ProgramPG1 is a former Arcadis employee of 24 years and 3 months.*

**Defendant(2)(3)(3)**, *AARON COHEN* (hereinafter, "**ProgramDirector1**"), is employed with the **WSCS** as a Program Director and at all times material hereto, was "operating under the color of law", and whose duties were to oversee the Drycleaner Solvent Cleanup Program (hereinafter, "**DSCP**").

**Defendant(2)(4)**, *FDEP Office of General Counsel* (As an Agency) (hereinafter, "**OGC**") is a sub-division of the **FDEP** operating with all the same powers and duties of the **FDEP**, and at all times material hereto, conducts business, and has an office located at *2600 Blair Stone Road.* in Tallahassee, Florida with a zip code of 32301.

**The OGC is *respondent superior* for defendant(s);**

6.    **Defendant(2)(4)(1)**, *GARY BALLARD* (hereinafter, "**Counsel2**"), is employed with the **OGC** as Lead Counsel, and at all times material hereto, was "operating under the color of law", and whose duties were to oversee the members of the Office of General Counsel.

**Defendant(2)(4)(2)**, *STACI KICHLER* (hereinafter, "**Counsel1**"), is employed with the **OGC** as legal Counsel, and at all times material hereto, was

"operating under the color of law", and whose duties involve serving the interest of **FDEP**, while upholding the law.

**Defendant(2)(5)**, *FDEP of the South-East District* (As an Agency) (hereinafter, "**FDEP-SED**") is a sub-division of the **FDEP** operating with all the same powers and duties of the **FDEP**, and at all times material hereto, conducts business, and has an office located at *3301 Gun Club Road* in West Palm Beach, Florida with a zip code of 33406.

**The FDEP-SED is *respondent superior* for defendant(s);**

7.          **Defendant(2)(5)(1)**, *JASON ANDREOTTA* (hereinafter, "**Director1**"), is employed with the **FDEP-SED** as a District Director, and at all times material hereto, was "operating under the color of law", and whose duties were to provide guidance and oversight to all program areas in the southeast district.

**Defendant(2)(5)(2)**, *SIRENA DAVILA* (hereinafter, "**Director2**"), is employed with the **FDEP-SED** as an Assistant Director, and at all times material hereto, was "operating under the color of law", and whose duties were to assist **Director1** in fulfilling his duties along with coordinating the compliance functions of the **FDEP-SED**.

**Defendant(2)(5)(3)**, *NORVA BLANDIN* (hereinafter, "**Manager1**"), is employed with the **FDEP-SED** as an Environmental Manager, and at all times material hereto, was "operating under the color of law", and whose duties were to oversee the district's Permitting and Waste Cleanup programs.

**Defendant(2)(5)(4)**, *ALANNAH IRWIN* (hereinafter, "**Manager2**"), is employed with the **FDEP**-**SED** as an Environmental Manager, and at all times material hereto, was "operating under the color of law", and whose duties were to oversee the district's Permitting and Waste Cleanup programs.

**Defendant(2)(5)(5)**, *ROMINA LANCELLOTTI* (hereinafter, "**Inspector1**") is employed with the **FDEP**-**SED** as an Environmental Specialist II, and at all times material hereto, was "operating under the color of law", and whose duties were to oversee the district's Permitting and Waste Cleanup programs.

**Defendant(2)(5)(6)**, *JUSTIN STARK* (hereinafter, "**FormerAgent1**"), was employed with the **FDEP**-**SED** as an Environmental Specialist, and at all times material hereto, was "operating under the color of law", and whose duties were to provide compliance assistance. FormerAgent1 is currently an employee of the **EPA** Region IV office.

### Defendant(s) whom are contracted by the FDEP;

**Defendant(2)(6)**, *ARCADIS U.S., INC.* (hereinafter, "**Arcadis**") at all times material hereto, was authorized to do business in the state of Florida *(Active Certificate of Authorization #GB564)* and was doing business in the State of Florida through its office in Highland Ranch, Colorado and registered agent in Boynton Beach , Florida. The nature of Arcadis's business is design, engineering, and consultancy solutions for natural and built assets.

**Defendant(s) whom are sub-contracted by Arcadis;**

8.      **Defendan**t(2)(6)(1), *GPI PROPERTIES, INC., d/b/a Groundwater Protect-*
*ion, a division of DrillPro, LLC.* (hereinafter, "**Groundwater Protection**"),
is a Florida limited liability company properly registered and domiciled in
Florida, and conducts business from its principal address in Orlando,
Florida, The nature of **Groundwater Protection's** business is to provide
specialized environmental drilling services.

**Defendant(2)(6)(2)**, *EARTH TECH DRILLING, LLC.* (hereinafter,
"**EarthTech**"), is a Florida Corporation properly registered and domiciled
in Florida, with an office located in Pompano Beach, Florida, The nature of
**EarthTech's** business is to provide professional drilling services.

**CHRONOLOGY OF FACTUAL ALLEGATION**

9.      **November of 2014**, Forest Hills RE Investments, LLLP (hereinafter, "**FHRI**")
purchased a strip mall located at 2549-2565 Forest Hill Blvd, this location housed
a drycleaner at 2565 Forest Hill Blvd (hereinafter, "**LSC-Plant")**. The **LSC-Plant**
site exists within the Biscayne Aquifer, the Biscayne Aquifer is a Sole Source
Aquifer (hereinafter, "**SSA**") as described in 40 U.S.C. § 149.2(d). In order for an
aquifer to qualify as a sole source aquifer it must provide for a minimum of 50
percent of the drinking water supply for its service area

10.     **Prior to December 2017**, **FDEP** assigned the **LSC-Plant** site to **Arcadis** to
perform the "Initial Site Assessment" (hereinafter, "**ISA**"), the Senior Scientist for
the task was Douglas J. McGlone, and the Principal Hydrogeologist was William
D. Vogelsong.

11.   **On December 7, 2017**, **Arcadis** performed the **ISA** at the **LSC-Plant** site.

12.   **On December 13, 2017**, **Arcadis** submitted the **ISA** to the **FDEP** for review (*please see "Reference A"*).

13.   **On January 5, 2018** (In reference to the "**ISA**"), **FDEP** employee Bill Linn on comment #3 request that ground penetrating radar (hereinafter, "**GPR**") be used to locate the drain field, and on comment #4 states that it is their (the **FDEP**) belief that the site is utilizing city water and sewer *(please see "Reference B")*.

**Notable Mention:**

   i.   **GPR** plays an integral part by providing a non-intrusive means of examining the subsurface for environmental hazards such as soil contamination, underground storage tanks and drums. The key to a comprehensive environmental assessment is the subsurface investigation.

   ii.   The most effective way for **Arcadis** to identify the drain field *(per Bill Linn's comments)*, would be to identify the pipes leading to, and from the septic tanks.

14.   **Prior to December 2018**, the **FDEP** assigned the **LSC-Plant** site to **Arcadis** to perform the Site Assessment Report (hereinafter, "**SAR**"), not to be confused with the **ISA**.

15.   **Prior to December 2018**, **Arcadis** subcontracted the services of Groundwater Protection to perform the drilling at the **LSC-Plant** site.

16.   **On December 3, 2018**, Arcadis and a private utility locate service company, "Ground Penetrating Radar Services, Inc" to perform an Electromagnetic Induction (hereinafter, "**EM**"), and a **GPR** survey of the **LSC-Plant** site.

16a. **On the same day** as the **EM** and **GPR** Arcadis began drilling at the LSC-Plant site for the purposes of installing five Modified Air and Gas (hereinafter, "**MAG**") wells.

17. **From December 3, 2018 to January 11, 2019**, Arcadis along with the services rendered by its subcontractors performed the site assessment at the **LSC-Plant** site.

18. **On February 1, 2019**, **Arcadis** submits their **SAR** to the **FDEP** for review, Per Figure 3 of **Arcadis's SAR** no underground pipes leading to and from the septic tank was identified. The only underground utility identified was the natural gas (hereinafter, "**NG**") line, which commences at the westside fence of the strip mall *(The westside fence runs parallel to Forest Hill Blvd.),* the **NG** line leads north, until it reaches the rear of the building, then veers east *(similar to an "L", or a hockey stick)* until it reaches the gas meter located directly behind the Dry Cleaners next to the Boiler *(please see "Reference C")* .

**Notable Mention**

The **LSC-Plant** site **does** utilize city water, **but does not** utilized city sewer. Therefore it was **Arcadis's** obligation and/or responsibility and/or duty to ensure that all pipes leading to and from the septic tanks, at the **LSC-Plant** site be identified, and marked in accordance with Florida law, a mandatory minimum of 2 days prior to any drilling; this process is known as pre-drilling clearance/potholing/daylighting and is a mandatory/non-discretionary pre-requisite per the **FDEP's** SOP-17.

*Per* **FDEP** *SOP-17; "[T]he standard practice is to post hole or hand auger to a depth of four feet to verify that the location is clear of utilities. The Contractor*

*should obtain copies of blueprints or as-built drawings before beginning work on-site. These should be readily available for recently constructed facilities."*

19.     **On April 23, 2019**, **ProgramPG1** created a memorandum and submitted it to **ContractManager1** *(please see "Reference D"),*

**Key take aways from the comment section**

*i.*   *(#3) [T]hat department engineers consider "Interim Source Removal".*

*ii.*   *(#14) Arcadis recommends consideration of additional soil sampling and an excavation. They also recommend considering SVE using MAGS wells to remediate soil. It is true that there appears to be insufficient soil data to proceed with excavation. Soil sampling did not identify significant soil contamination,* ***but MAGS test results indicate a very significant remaining vadose zone source****. It may be feasible that an interim source removal (ISR) using SVE could be implemented without the need for further soil sampling. Department engineers should consider remedial strategies for the site and then, determine whether additional soil sampling is warranted.*

*iii.*   *(#16) The SAR can be revised/resubmitted and additional assessment completed as supplemental site assessment.*

20.     **On May 9, 2019**, **Arcadis** resubmitted the **SAR** with the recommended corrections to the **FDEP** for review.

21.     **On June 6th, 2019**, **Mr. Dulcio** purchased the Life Style Cleaners (hereinafter, "**LSC**") business and equipment from the property owner **FHRI**, then signed a lease agreement to lease the **LSC-Plant** site for 5 years. The **LSC-Plant** is

registered with the **EPA** with an **EPA** ID number of **FLD981029168**, and with the

**FDEP** with a site ID of **ERIC_5194**.

**Notable Mention:**

Mr. **Dulcio** is a quintessential "*serial entrepreneur*", with several businesses

registered and domiciled in the states of Florida, and Michigan.

Of **Mr. Dulcio**'s many businesses **Mr. Dulcio** owned and operated four (4)

drycleaners 1 plants and 3 drop-off operations.

22. **On or about July 25th 2019**, Employees of the **FDEP** performed a Compliance

Evaluation Inspection at the **LSC-Plant** site.

**Notable Mention**:

The inspection was conducted by **Manager2**, **Inspector1**, and an unknown

member of the **FDEP**, **Mr. Dulcio** was also present for this inspection.

23. **Prior to November 1, 2019**, **Mr. Dulcio** completed all needed repairs and

corrected all active **FDEP** violations in order to be in compliance and to begin

operating the LSC business.

24. **On April of 2020** Mr. Dulcio purchased the second LSC location, this location was

located at 18978 NW 2nd Ave, Miami Gardens, Florida with a zip code of 33167

(hereinafter, "**LSC-DropOff-2**")

25. **On September 9, 2020**, **Arcadis** returned to the **LSC-Plant** site and began drilling

for 3 additional wells (2 new wells, 1 replacement well), one inside of the **LSC-**

**Plant** building and the other 2 outside.

26. **On September 10, 2020**, **Arcadis** started collecting groundwater samples.

27. **On November 6ᵗʰ 2020** Mr. Dulcio purchased The third location, this location was located at 10878 Wiles Road, Coral Springs, Florida with a zip code of 33076 (hereinafter, "**LSC-DropOff-1**").

28. **On November 11, 2020** **Arcadis** submits their "Supplemental Site Assessment Report" to the **FDEP** for review *(please see "Reference E")* .

29. **On December 18, 2020**, **Arcadis** returned once again to the **LSC-Plant** site to collect additional/confirmatory groundwater samples.

30. **On January 8, 2021**, **Arcadis** submits their "Supplemental Assessment Report" to the **FDEP** for review *(please see "Reference F")* .

31. **On or about February 5, 2021**, **FHRI** entered into an agreement to sell the property to Highrange, Inc., (hereinafter "**HRI**").

32. **On February 25, 2021** HRI received a commitment letter from **Truist Bank** for the purchase of the property from **FHRI**.

33. **On March 25, 2021**, (a total of 1 year and 7 months from when **Arcadis** performed the **ISA**, and after **Arcadis** has completed the **SAR**), **ProgramPG1** submitted a memorandum to **ContractManager1** *(please see "Reference G")*.

    **Key take away from the comment section;**

    i. *(#1) Our initial site assessment found significant contamination at the site, but the PCE concentration in MW003 was 1,680 ug/l in January 2019 and was 72,600 ug/l in September 2020. Likewise, the PCE concentration in sediment from the septic tank was 0.21 mg/kg in December 2018 and 963 mg/kg in September 2020.*

> ii.   *(#7) Pending resolution of potential compliance issues and whether the facility is or will be an active drycleaner, site data appear to warrant remediation. If the drycleaner is not or will not be an active drycleaner in the near future, I recommend that department engineers consider an Interim Source Removal and clean-out of the septic tank.*

34.  **On April 13, 2021**, an unknown person entered into **LSC-Plant** site and demanded to do an inspection, **Mr. Dulcio** was not on-site at the time of the unknown persons arrival, but Morana Hilaire (hereinafter, "**SiteManager1**") was there and advised the unknown person that he would have to first speak with **Mr. Dulcio** to ensure that this was ok, the unknown person did not present any credentials to **SiteManager1**.

**Additional Details of The Exchange**

   i.   **SiteManager1** called **Mr. Dulcio** and advised **Mr. Dulcio** that there was a person there attempting to conduct an inspection. **Mr. Dulcio** stated that he was not aware of any inspections and asked to speak with the unknown person.

   ii.   **Mr. Dulcio** informed the unknown person that he wasn't aware of any inspection and if she could reschedule this "**inspection**" for another date and time. The unknown person advised **Mr. Dulcio** that the property owner signed a site access agreement which he would be in violation of if **Mr. Dulcio** did not grant her access. **Mr. Dulcio** acknowledged what the unknown person said, and requested a few minutes in order for **Mr. Dulcio** to call the property owner Bill Sahni (hereinafter, "**PropertyOwner1**"), in

hopes of gaining clarity as to who this unknown person was, and if the property owner was okay granting this unknown person site access.

iii.   **Mr. Dulcio** made several calls, along with sending text messages to the **PropertyOwner1**, but was not successful. **Mr. Dulcio** called **SiteManager1**, and requested to speak with the unknown person; **Mr. Dulcio** informed the unknown person of his inability to reach **PropertyOwner1** and re-requested for the inspection to be rescheduled, or if the unknown person could wait or come back later in the afternoon, to allow **Mr. Dulcio** time to commute to the **LSC-Plant** site from where he was, at that moment (**Miami**).

iv.   According to the **FDEP Enforcement Manual § 4.3.2.1** titled "Site Access Permission by Owner, Operator, or Person in Charge – Express Permission" page 31; "An investigator must scrupulously avoid conveying **ANY** direct or indirect threat of sanction or punishment to a person who refuses or revokes permission to enter.

v.   The unknown person became very irate and began to threaten **Mr. Dulcio** with violations, fines, and criminal charges of obstructing justice *(In direct violation of FDEP policy and procedures)*, **Mr. Dulcio** requested that the unknown person clam down and grant him just a few more minutes to contact the **FDEP** in hopes of gaining a better understanding as to who this person was.

vi.   The unknown person became even more irate and began insulting **Mr. Dulcio** in front of **SiteManager1**, by referring to **Mr. Dulcio** as "Mr. Sucio"

(This is a Spanish word that means unclean/dirty/disgusting), Mr. Dulcio demanded that the unknown person cease calling him "Mr. Sucio", and that he would be calling the **FDEP**.

vii.   **Mr. Dulcio** ended the call and called the only number he had for the **FDEP** but was greeted by a voicemail box. **Mr. Dulcio** had no other choice but to compose an email to the **FDEP** requesting assistance with this matter. While **Mr. Dulcio** was composing the email **SiteManager1** texted **Mr. Dulcio** advising him that the unknown person said she would come back later in the afternoon around 3:30 pm. To conduct the inspection with **Mr. Dulcio** on-site, **Mr. Dulcio** responded; "Ok".

viii.  **Mr. Dulcio** canceled his business meeting in Miami and begin commuting to **LSC-Plant** site located in the city of West Palm Beach, Florida to meet with the unknown person at 3:30 pm p.m. before **Mr. Dulcio** got to the **LSC-Plant** site the **PropertyOwner1** called **Mr. Dulcio** advising him that the unknown person was indeed an employee of the **FDEP** and to please grant her access next time she comes.

ix.    **Mr. Dulcio** advised **PropertyOwner1** that; He (**Mr. Dulcio**) will make sure all of his employees are aware of the potential of a surprise inspection. **Mr. Dulcio** also advised **PropertyOwner1** that he will compose an email apologizing to the **FDEP**, and ensuring them that they won't have to worry about delays in site access in the future.

x.     **Mr. Dulcio** composed the email and sent it to **PropertyOwner1**, **Manager2**, and **Inspector1**, in the email **Mr. Dulcio** apologized for the

misunderstanding/miscommunication and stated that all of his employees are aware of the potential of a surprise inspection and that the **FDEP** will not have an issue with site access moving forward.

    *xi.* **Manager2** responded with additional threats of violations, fines, fees, and civil liabilities (In direct violation of **FDEP** policy and procedures) for the current instance and if ever site access is not granted in the future.

**35.** <u>On April 16, 2021</u>, **Inspector1** returned to the **LSC-Plant** site and performed an inspection at the **LSC-Plant** site. As a result of the inspectors report **Mr. Dulcio** was placed in "non-compliance" status. *(please see "Reference I")*

    <u>**Notable Mention**</u>

    *i.* **Manager2** created an email chain and advised **FHRI**, and **Mr. Dulcio** that **LSC-Plant** is in "non-compliance" status and is eligible for program termination from the **Drycleaner Solvent CleanUp Program**.

    *ii.* This information made **FHRI** very upset with **Mr. Dulcio**, causing **PropertyOwner1** to threaten to evict **Mr. Dulcio** if he doesn't correct the violations that has caused the site to be in "non-compliance" status.

**36.** <u>On or about May 22, 2021</u>, **Truist bank** informed **HRI** that it "could not rely upon the property as collateral", due to the site being in a non-compliance status with the **FDEP**.

**37.** <u>On May 25th 2021</u> **Mr. Dulcio** established the fourth location in Detroit, Michigan *(with a "Department of Licensing and Regulatory Affairs" Entity ID number of 80267681)* (hereinafter, "**LSC-Remote-DropOff**") as the result of securing an

uniform cleaning and alteration contract with a reputable manufacturing factory in Michigan.

**Notable Mention**

    *i.* The **LSC-DropOff-1**, **LSC-DropOff-2, and LSC-Remote-DropOff** were solely dependent on **LSC-Plant** for all its fabric needs (cleaning, and alterations).

**38.** **Prior to July 1, 2021** **Mr. Dulcio** completed all corrections requested by the **FDEP-SED** in order to return to compliance and continue operating his business(es).

**Notable Mention**

    *i.* When **Mr. Dulcio** contacted the **FDEP-SED** to confirm if they were in receipt of his (**Mr. Dulcio**) pictures, proving that he has complied with their demands, **Manager2** advised **Mr. Dulcio** that the **FDEP-SED** was in receipt of his picture, and to grant the **FDEP** sometime to review the photos and information, **Manager2** concluded her email by stating that the department had 300 days to review the information.

    *ii.* This response made **FHRI** very upset causing **PropertyOwner1** to demand the keys for **LSC-Plant** site, and informed **Mr. Dulcio** that his lease contained a clause making it mandatory to be in compliance with all federal, state and local laws, and due to **Mr. Dulcio** "non-compliance", **FHRI** must evict him.

    *iii.* **Mr. Dulcio** begged **PropertyOwner1** to reconsider, **PropertyOwner1** said he wouldn't. **Mr. Dulcio** then asked if he could please sell the business

Instead to generate money, due to **Mr. Dulcio's** wife being 8 months pregnant, with an expected delivery date of August 10, 2021.

    *iv.* **PropertyOwner1** said he will grant **Mr. Dulcio's** request to sell the business, but also requested if **Mr. Dulcio** could please fix the "non-compliance" issue, or at least figure out what was going on, **Mr. Dulcio** gave **PropertyOwner1** his word that he would sort this matter out.

**39.**     <u>On July 13th 2021</u>, **Mr. Dulcio** officially begin to try to sell the **LSC business** prior to his eviction date of November 1, 2021, but all prospective buyers rescinded their offers after discovery of the "non-compliance" status of the **LSC-Plant** site.

<u>Notable Mention</u>

    *i.* Due to **Mr. Dulcio's** non-compliance status with the **FDEP**, **Mr. Dulcio** was in direct violation with the terms and conditions of his lease agreement with **FHRI** which consequently was the direct cause for **Mr. Dulcio's** eviction from the **LSC-Plant** site (On Nov 1, 2021).

<u>Prior to September 1st 2021</u>, **Mr. Dulcio** was advised that the **FDEP-SED** wanted to have a conference call (hereinafter, "**ConferenceCall**") with him (**Mr. Dulcio**), and the property owner (**PropertyOwner1**) on September 1st 2021. Mr. Dulcio agreed to attend the conference call.

**40.**     <u>On September  1st 2021</u>, **Mr. Dulcio**, **PropertyOwner1**, **Inspector1**, and **FormerAgent1** were all on the **ConferenceCall** for the purposes of addressing the outstanding violations and how we could bring the violations to a collective close

**Notable Mention**

    *i.*  During the **ConferenceCall Inspector1** and **FormerAgent1** advised both **Mr. Dulcio** and **PropertyOwner1** that the **FDEP**, **FDEP-SED**, **WSCS**, **DSCP** all suspect that the **LSC-Plant** site has had a new discharge of Perchloroethylene and that Mr. Dulcio was the cause of the new release.

**41.**    <u>**On November 1, 2021**</u>, **Mr. Dulcio** was evicted from the **LSC-Plant** site.

Due to **Mr. Dulcio's** eviction, **Mr. Dulcio** lost possession of the **LSC-Plant** site and all of his dry cleaning, and cleaning equipment, which performed all of his (**Mr. Dulcio**) fabric cleaning, and alteration needs.

<u>**Subsequent Fall-Out**</u>

    *i.*  Due to the loss of **LSC-Plant**, **Mr. Dulcio** was unable to perform the work needed to sustain the **LSC-DropOff-1, LSC-DropOff-2, LSC-Remote-DropOff** sites/locations, and was forced to return the keys to the owners of both properties, plus cease all operations in the state of Michigan.

    *ii.*  Due to **Mr. Dulcio**'s non-compliance status **Mr. Dulcio** lost his government contracts, which required him to be in compliance with all state laws, local laws, statutes, and ordinances.

    *iii.*  Due to **Mr. Dulcio**'s non-compliance status, **Mr. Dulcio** lost his exclusive textile restoration contract with a reputable water restoration company that services the entire state of Florida.

    *iv.*  Due to **Mr. Dulcio** non-compliance status **Mr. Dulcio** was not able to apply for a series of additional government as well as private business contracts.

**42.**    <u>**Between November 1st 2021 and July 5th 2022**</u>, **Mr. Dulcio** was resolute in becoming competent in environmental science, geology, and hydrology for the

purpose of figuring out why **FDEP** and **Arcadis** were unable to understand the true cause of the spike in Perchloroethylene at the **LSC-Plant** site and decided to research this matter for himself. **Mr. Dulcio** first started by reviewing the **ISA**, and the **SAR's** that were submitted to the **FDEP** by **Arcadis** after fully reading and then re-reading the **ISA**, and **SAR's Mr. Dulcio** decided to call the Arcadis employee, named Douglas J. McGlone (hereinafter, "**Douglas**") via the number that was listed on the SAR cover page in hopes of gaining clarity on a series of discrepancies **Mr. Dulcio** found within **Arcadis's SAR**.

i.   As **Mr. Dulcio** began to ask **Douglas** questions about the discrepancies, **Douglas** appeared to become a bit agitated and began to divert the conversation by saying; "*Those things don't matter, the real problem is they have a black business owner that didn't give them access. He's basically digging his own grave.*"

ii.  This statement shocked **Mr. Dulcio** because **Mr. Dulcio** has never met **Douglas**, it was at that moment **Mr. Dulcio** realized that;

   **a.** **Douglas** was not aware of who he was speaking to on the phone;

   **b.** That some of the difficulties that **Mr. Dulcio** was dealing with, with the **FDEP** may have been racially motivated.

iii. **Mr. Dulcio** is an "**American with Disabilities**" as described in *42 U.S.C. § 12102(1a)&(1b),* Mr. Dulcio was tested and diagnosed as having a learning disability (Reading, Learning, and Concentrating) once in 1993, and again in 1997 as a student in the Miami-Dade county public school system.

43.   **On December 1, 2021**, The **FDEP** issued **Mr. Dulcio** an **Official Notice of Potential New Discharge**.

44.   **On February 10, 2022**, the **FDEP** issued **Mr. Dulcio** an **Official Notice of Violation** (The first step in an Administrative Proceeding).

45.   **On May 4th 2022**, **Mr. Dulcio** was made aware of a criminal investigation that was opened against him by the **FDEP**.

46.   **Mr. Dulcio** asked the **FDEP**, what initiated the criminal investigation. The **FDEP** replied that the September 10th 2020, sampling event along with consultation from **Arcadis** were their basis for launching a criminal investigation into **Mr. Dulcio**.

47.   **On May 18, 2022**, the **FDEP** acquired a search warrant with **Mr. Dulcio**'s name on it, and with the assistance of 10 police officers began to search the former **LSC-Plant** site.

48.   **On July 5, 2022**, **Mr. Dulcio** gave notice to the **EPA, FDEP, FDEP-SED, DSCP,** and **WSCS** that the **LSC-Plant** site was a "Dense Non-Aqueous Phase Liquid" (hereinafter, "**DNAPL**") site, DNAPL is free product as codified in Florida Administrative Code 62-780.200(20).

   **Notable Mention**

   i.   Due to the misdiagnosis of the former **LSC-Plant** site, the site was subsequently mishandled by **Arcadis**, **EarthTech**, and **Groundwater Protection** causing the spike in chemical of concern (hereinafter, "**COC**") that was found in the groundwater samples dated September 10, 2020.

49.   **On July 7, 2022**, an independent firm was contracted (Alpha-Omega Training and Compliance (hereinafter, "**AOTC**")), to perform confirmatory sampling of the

former **LSC-Plant** site, during the sampling event the contractor determined that the site was indeed a **DNAPL** site and that a new discharge by **Mr. Dulcio** was not possible given the evidence.

50. **To date the,** The **FDEP** has an Open/Active Civil, and criminal investigation on **Mr. Dulcio**, both investigations have generated undue and unjust hardships for **Mr. Dulcio**, **Mr. Dulcio** has been forced to forego a series of gainful; investments opportunities, business opportunities, and even employment opportunities. With each iteration of the aforementioned opportunities **Mr. Dulcio** suffered damages and/or additional damages to his mental, emotional, and economical health (both known and unknown) and an inability to provide for what matters most to **Mr. Dulcio** (his family).

**COUNT I**
**DECLARITORY RELIEF**
*28 U.S.C. § § 2201-2202*
*v. (FDEP, FDEP-SED, WSCS, DSCP & ARCADIS)*

51. **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

52. This is a cause of action against **FDEP, FDEP-SED, WSCS, DSCP**, and **Arcadis** (hereinafter, "**Count1Defendants**"), pursuant to the Declaratory Judgement Act, *28 U.S.C. §§ 2201-2202*.

53. This court has the authority and jurisdiction to order the declaratory relief sought by **Mr. Dulcio** in this matter.

54. **Mr. Dulcio** is in doubt as to whether he, and/or **FDEP**, and/or **Arcadis** and/or **Count1Defendants** as a whole is the responsible party/parties pursuant to Section

*376.308(2) Fla. Stat.* for the new discharge or other condition of pollution covered by Sections *376.30* through *376.317* Fla Stat., at the **LSC-Plant** site.

55. **FDEP**'s duty to the public is to protect Florida's soil, water, and air.

56. **Arcadis**'s contractual duties to **FDEP** and by extension **Mr. Dulcio** is to provide professional services with an emphasis on the quality of care, and not to further contaminate the **LSC-Plant** site and/or groundwater.

57. Due to **Count1Defendants**'s breach of duty, conflict of interest, and potential criminal and/or civil liabilities associated with the determination of who the responsible party may be; it is clear that neither can be dependent upon for an unbiased determination.

58. As a direct and proximate result of this controversy **Mr. Dulcio's** current and future; rights, liberties, protections, and freedom have been threatened, hindered as well as infringed upon.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury *(In accordance with Rules 38 & 39 under title VI of the Federal rules of Civil Procedure)* for a declaratory judgement pursuant to *28 U.S.C. §§ 2201-2202*, declaring **FDEP** and/or **Arcadis** and/or **Count1Defendatns** a whole as the responsible parties pursuant to Section *376.3078(2) Fla. Stat.,* and if possible an exoneration for **Mr. Dulcio** or the benefits of limitation of liability of future action brought against the **LSC-Plant** site as a result of the new discharge or other condition of pollution, along with expert witness fees, on the grounds that such an award is in the public interest, and any further relief as the Court deems proper.

## COUNT II
## DECLARITORY RELIEF
*28 U.S.C. § § 2201-2202*
*v. (FDEP, FDEP-SED, OGC, MANAGER2 & INSPECTOR1)*

**59.**   **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

**60.**   This is a cause of action against **FDEP**, **FDEP-SED**, **OGC**, **Manager2**, and **Inspector1** (hereinafter, "**Count2Defendants**") pursuant to the Declaratory Judgement Act, *28 U.S.C. §§ 2201-2202*.

**61.**   This court has the authority and jurisdiction to order the declaratory relief sought by **Mr. Dulcio** in this matter.

**62.**   **Mr. Dulcio** is in doubt as to whether violations that were issued to him (**Mr. Dulcio**) by the **FDEP-SED** on July 25, 2019 by **Manager2**, April 16, 2021 by **Inspector1**, and December 1, 2021 by **FDEP, FDEP-SED,** and **OGC** are with merit and/or accurate/true.

**63.**   The **FDEP, FDEP-SED, OGC**, and by extension its employees (**Counsel1, Manager2**, and **Inspector1**) have a duty to the public to protect Florida's soil, water, and air, and above all to obey and honor the law, along with their oath of office.

**64.**   **Mr. Dulcio** has made numerous attempts to resolve this matter, but have not received cooperation from **Count2Defendants**.

**65.**   Separate of this action **Mr. Dulcio** will also be filing (under seal) a **Reverse False Claim** in federal court in accordance with *31 U.S.C. § 3729(a)(1)(G)* of the **False Claims Act** against **FDEP-SED**, **Manager2**, and **Inspector1** for the purpose of

26

holding them criminally liable for their intentional malfeasance, misfeasance, and nonfeasance.

**66.**     As a direct and proximate result of this controversy **Mr. Dulcio's** current and future; rights, liberties, protections, and freedom have been threatened, hindered as well as infringed upon.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury *(In accordance with Rules 38 & 39 under title VI of the Federal rules of Civil Procedure)* for a declaratory judgement pursuant to *28 U.S.C. §§ 2201-2202*, declaring which violations/claims were proper/true, and which violations/claims were not proper/false against **Count2Defendants**, along with expert witness fees, on the grounds that such an award is in the public interest, and any further relief as the Court deems proper.

**COUNT III**
**NEGLIGENCE *PER SE***
*(Section 556.106(2)(a) Fla. Stat.)*
*v. (ARCADIS & GROUNDWATER PROTECTION)*

**67.**     **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

**68.**     *Section 566.102 Fla. Stat.* definitions pertinent to **Count III**;

(3) "**Damage**": *Any impact upon or contact with, including, without limitation, penetrating, striking, scraping, displacing, or denting, however slight, the protective coating, housing, or other protective devices of any underground facility, or the removal or weakening of any lateral or vertical support from any underground facility, or the severance, partial or complete, of any underground facility.*

(6) "**Excavate**" or "**excavation**": *Any manmade cut, cavity, trench, or depression in the earth's surface, formed by removal of earth, intended to change the grade or level of land, or intended to penetrate or disturb the surface of the earth, including land beneath the waters of the state, as defined in s. 373.019(22), and the term includes pipe bursting and directional drilling or boring from one point to another point beneath the surface of the earth, or other trenchless technologies.*

(10) **"Member operator":** *Any person who furnishes or transports materials or services by means of an underground facility.*

(12) "**Person":** *Any individual, firm, joint venture, partnership, corporation, association, municipality, or other political subdivision, governmental unit, department, or agency, and includes any trustee, receiver, assignee, or personal representative of a person.*

(16) "**Underground facility**": *Any public or private personal property which is buried, placed below ground, or submerged on any member operator's right-of-way, easement, or permitted use which is being used or will be used in connection with the storage or conveyance of water; sewage; electronic, telephonic, or telegraphic communication; electric energy; oil; petroleum products; natural gas; optical signals; or other substances, and includes, but is not limited to, pipelines, pipes, sewers, conduits, cables, valves, and lines.*

**69.**     **Section** 556.106 Fla. Stat. states;

**(2)(a)** *If a person violates s. 556.105(1) or (6), and subsequently, whether by himself or herself or through the person's employees, contractors, subcontractors, or agents, performs an excavation or demolition that damages an underground facility of a member operator,* ***it is rebuttably presumed that the person was negligent. The person, if found liable, is liable for the total sum of the losses to all member operators involved as those costs are normally computed. Any damage for loss of revenue and loss of use may not exceed $500,000 per affected underground facility,*** *except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.*

**(2)(b)** If any excavator fails to discharge a duty imposed by this chapter, the excavator, **if found liable, is liable for the total sum of the losses to all parties involved as those costs are normally computed. Any damage for loss of revenue and loss of use may not exceed $500,000 per affected underground facility**, except that revenues lost by a governmental member operator whose revenues are used to support payments on principal and interest on bonds may not be limited.

70.     **Mr. Dulcio** is a "Member Operator" as described *Section 556.102(10) Fla. Stat.,* and **Count3Deffendants** are a "Person" as described in *Section 556.102(12) Fla. Stat.*, lastly the septic tank at LSC-Plant site is a "Underground Facility" as described in *Section 556.102(16) Fla. Stat.*

71.    This action arises from work performed between December 3, 2018 to January 11, 2019 at the **LSC-Plant** site by defendant **Arcadis** & **Groundwater Protection** (hereinafter, "**Count3Defendants**") for the **FDEP**.

72.    Per the **FDEP SOP**-17 and *Section 556.105 Fla. Stat.,* it was the responsibility of **Count3Defendants** to perform a utility clearance of the areas where "Modified Air and Gas", and monitoring wells would be developed, prior to drilling.

73.    **Count3Defendants** failed to discharge their duties by not performing a proper underground survey prior to drilling, and also by puncturing (during drilling, and well development) the inlet pipe (leading to the septic tank), and possibly the outlet pipe (leading away from the septic tank) of the on-site septic tanks (Underground Facility).

74.    Pursuant to *Section 556.105(12)(a) Fla. Stat.* the excavator must immediately report the contact or damage by calling 911 and file a report in the system, which **Count3Defendant** failed to do.

75.    As a direct cause of **Count3Defendants** negligence **Mr. Dulcio** was ordered (By the property owner) to cease all operations that utilized the onsite septic tank until this matter could be fully resolved.

76.    As a direct and proximate cause of the Negligence of **Count3Defendants, Mr. Dulcio** suffered damages in the form of; damages to a pre-existing injury, loss wages, loss profits, loss of use, and was accused by the **FDEP** of causing another discharge and had to expend additional expenses to investigate the source of a potential discharge.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count3Defendants** for compensatory damages, special damages, and punitive damages *(If the court finds it proper)* for a combined total within the jurisdictional limits of this Court, together with cost of suit, interest, and any further relief as the Court deems proper.

**COUNT IV**
**ACTION FOR DAMAGES RESULTING FROM**
***VIOLATION OF CHAPTER 376 Fla. Stat.***
*v. (ARCADIS, GROUNDWATER PROTECTION & EARTHTECH)*

77.   **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

78.   This action arises from work that was performed at the **LSC-Plant** site between December 3, 2018 through January 11, 2019, and also between September 9, 2020 through September 10, 2020 by **Arcadis**, **Groundwater Protection**, and **EarthTech** (hereinafter, "**Count4Defendants**").

79.   Chapter 376, Florida Statutes, addresses the serious ground and water pollution problems caused by contamination of groundwater and/or soil.

80.   Chapter 376.30, Florida Statute, states;

> *"That the preservation of surface and ground waters is a matter of the highest urgency and priority, as these waters provide the primary source for potable water in this state".*

81.   The Florida Legislature further recognizes that it is vital to protect Florida's land and water resources from such pollution, and make it a top priority to prevent and quickly remedy any pollution:

> *Spills, discharges, and escapes of pollutants, drycleaning solvents, and hazardous substances that occur as a result of procedures taken by private*

31

*and governmental entities involving the storage, transportation, and disposal of such products pose threats of great danger and damage to the environment of the state, to the citizens of the state, and to other interests deriving livelihood from the state.*

82.  376.313, Fla Stat, provides for a private cause of action to recover all damages resulting from a discharge or other condition of pollution covered by Sections 376.30 – 376.317, *Fla Stat.*

83.  Pursuant to Section 376.301, Fla Stat, "discharge" includes;

*"spilling, leaking, seeping, pouring, misapplying, emitting, emptying, releasing, or dumping" any pollutant or hazardous substance which occurs and which affects lands and surface or ground waters. "*

84.  **376.313(1) Fla. Stat. states**;

*The remedies in ss. 376.30-376.317 shall be deemed to be **cumulative and not exclusive**.*

85.  Investigation of the **LSC-Plant** site has revealed that the site was and still is a **DNAPL** site, and due to **Count4Defendants** negligence with the handling of the site, a previous discharge that was trapped in the vadose zone, was transported to the ground water through a process that the **EPA** refers to as "Short Circuiting".

86.  Due to the short circuiting, caused by the wells developed by **Count4Defendants** an old discharge of **PERC**, that was immobile, was able to migrate and create a new discharge or other condition of pollution covered by Sections 376.30 through 376.317, Fla Stat.

87.   As a direct cause of the discharge or other conditions of pollution set forth above, the groundwater below the **LSC-Plant** site became highly contaminated with pollutants.

88.   As a direct and proximate cause of **Count4Defendants** actions **Mr. Dulcio** suffered damages in the form of; damage to a pre-existing injury, loss wages, loss profits, and had to expend additional finances to investigate the source of a potentially New discharge.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count4Defendants** for compensatory damages and punitive damages *(If the court finds it proper)* for a combined total within the jurisdictional limits of this Court, together with cost of suit, interest, and any further relief as the Court deems proper.

**COUNT V**
**DEPRIVATION OF RIGHTS**
**UNDER THE COLOR OF LAW**
*42 U.S.C. § 1983 & 1985 (Amendment I)*
*v. (INSPECTOR1 & FORMERAGENT1)*

89.   **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

90.   This action arises from 2 separate encounters that **Mr. Dulcio** experienced with the **FDEP** on April 16, 2021, and on September 1, 2021 from **Inspector1**, and **FormerAgent1** (hereinafter, "**Count5Defendants**").

91.   At all times material to this count "**Count5Defendants**" failed to pass the saucier test (the 2-part test needed for government employees to qualify for *qualified immunity*).

92.     On April 16, 2021, **Inspector1** arrived at the **LSC-Plant** site to perform an inspection of the site. **Mr. Dulcio** intended to be present but was not able to due to a family emergency. Due to **Mr. Dulcio**'s absence **Mr. Dulcio** requested that his employee that was onsite Monach (hereinafter "**Employee1**") to openly video record the **FDEP** official for the purposes of documenting the visit and documenting any violations, area of concern, and general recommendations/comments that **Inspector1** may make.

93.     One minute after **Employee1** began openly recording **Inspector1**, **Inspector1** demanded that he stop recording her, **Employee1** explained that he was only recording **Inspector1** by request of **Mr. Dulcio**.

94.     **Inspector1** advised **Employee1** that if he continues to record her, that he (**Employee1**) and **Mr. Dulcio** will be guilty of obstructing/hindering the inspection. *(please see "Reference 1")*

95.     On September 1, 2021 **Mr. Dulcio** was on a conference call with **PropertyOwner1**, and **Count5Defendants** to discuss the violations issued on April 16, 2021 inspection, during this call **Inspector1** directly threaten **Mr. Dulcio** with the assistance of **FormerAgent1** that if Mr. Dulcio attempts to record an inspection again, he will be in violation of an agency policy.

96.     The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest *(please see Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir.1994).*

97.     **Count5Defendants** deprived **Mr. Dulcio** of his 1st Amendment right, and they also attempted to discourage Mr. Dulcio from exercising that right in the future.

**98.** As a direct and proximate cause of this deprivation, as described above **Mr. Dulcio** suffered damage to a pre-existing injury, emotional distress, and mental anguish.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count5Defendants** for compensatory damages and punitive damages *(If the court finds it proper)* for a combined total within the jurisdictional limits of this Court, together with cost of suit, interest, and any further relief as the Court deems proper.

**COUNT VI**
**DEFAMATION (LIBEL)** *PER SE*
*(Section 376.302(12) Fla. Stat.)*
*v. (DIRECTOR1, MANAGER2 & INSPECTOR1)*

**99.** **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

**100.** The defendants relevant to this count are **Director1**, **Manager2**, and **Inspector1** (hereinafter, "**Count6Defendants**").

**101.** At all times material to this count "**Count6Defendants**" failed to pass the saucier test (the 2-part test needed for government employees to qualify for *qualified immunity*).

**102.** This is a Defamation claim brought under 42 U.S.C. § 1983, against **Count6Defendants** for the deprivation of rights, privileges, and immunities secured by the constitution and laws.

**103.** On July 25, 2019, **Manager2**, and **Inspector1** came to the **LSC-Plant** site to perform an inspection, at the end of the inspection **Manager2**, and **Inspector1** issued **Mr. Dulcio** a series of violations that were known to be false by both parties at the time the violations were issued.

104. **Mr. Dulcio** was able to resolve the violations by performing some recommended tasks, and by reporting **Manager2**, to her superior **Manager1**.

105. On April 16, 2021, Under the direction of **Manager2**, **Inspector1** returned to the **LSC-Plant** site and re-issued the same violations (that were known to be false) from the inspection that was conducted on July 25, 2019, along with 2 additional violations that were meritless, and that Inspector1 knew or should have known were false and meritless at the time that the violations were issued.

106. On June 8, 2021, **Mr. Dulcio** received the official warning letter from the **FDEP** by way of **Director1** outlining the same meritless violations.

107. *376.302(12) Fla. Stat.* states;

> *To knowingly make any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter, or to falsify, tamper with, or knowingly render inaccurate any monitoring device or method required to be maintained under this chapter or by any permit, registration, rule, or order issued under this chapter.*

108. *18 U.S.C § 1519* states;

> *Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to*

*or contemplation of any such matter or case, shall be fined under this title,*

*imprisoned not more than 20 years, or both.*

109.   **Mr. Dulcio** believes his race, personal animus (from **Count6Defendants** toward **Mr. Dulcio**), and the desire to classify **Mr. Dulcio** as a Significant Non-Complier (hereinafter, "**SNC**") in the **FDEP/EPA** database were the motivating factors behind these actions.

110.   A **SNC** classification enables the **FDEP** to impose harsher penalties, fines, and a shorter timeline for the violator to return to compliance.

111.   **Mr. Dulcio** resolved all the meritless, and false violations that were issued against him by July 1, 2021, but in furtherance of the conspiracy **Count6Defendants** deliberately left **Mr. Dulcio** in non-compliance status for the purposes of punishing and initiating a criminal investigation into **Mr. Dulcio**.

112.   As a direct and proximate cause of the defamation **Mr. Dulcio** suffered irreparable damage and harm to his finances, mental health, emotional stability, along with personal, and interpersonal relationships.

WHEREFORE, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count6Defendants** for compensatory damages and punitive damages *(If the court finds it proper)*, for a combined total within the jurisdictional limits of this Court together with cost of suit, interest, and any further relief as the Court deems proper, lastly **Mr. Dulcio** prays that the court will issue a criminal referral/criminal recommendation to Florida's attorney general in relation to the actions of **Count6Defendants**

<u>**COUNT VII**</u>
<u>**FRAUDULANT CONCEALMENT**</u>
*v. (ARCADIS)*

113.    **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

114.    **Arcadis** (hereinafter, "**Count7Defendants**") being the professionally contracted company for engineering, design, and consultation services for the **LSC-Plant** site, had a duty to disclose their current and previous suspensions of free product.

115.    <u>376.302(12) Fla. Stat. states;</u>

> *To knowingly make any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter, or to falsify, tamper with, or knowingly render inaccurate any monitoring device or method required to be maintained under this chapter or by any permit, registration, rule, or order issued under this chapter.*

116.    <u>18 U.S.C § 1519 states;</u>

> *Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.*

117.    <u>556.105 Fla. Stat. states;</u>

*If any contact with or damage to any pipe, cable or its protective covering, or any other underground facility occurs, the excavator causing the contact or damage shall immediately notify the member operator. If contact with or damage to an underground pipe or any other underground facility results in the escape of any natural gas or other hazardous substance or material regulated by the Pipeline and Hazardous Materials Safety Administration of the United States Department of Transportation, the excavator must immediately report the contact or damage by calling the 911 emergency telephone number. Upon receiving notice, the member operator shall send personnel to the location as soon as possible to effect temporary or permanent repair of the contact or damage. Until such time as the contact or damage has been repaired, the excavator shall cease excavation or demolition activities that may cause further damage to such underground facility.*

118. Arcadis had a duty to report to the FDEP that Groundwater protection made contract and/or damaged a pipe line at the LSC-Plant site.

119. Arcadis breached its duty when they failed to report to the FDEP that Groundwater Protection made contact with and/or damaged the septic pipeline at the **LSC-Plant** site.

120. On several occasions after the September 10, 2020 sampling event, the **FDEP** asked **Count7Defendants**; if it was possible for the spike in the Chemical of Concern (hereinafter, "**COC**") concentration in the groundwater and septic tank could have been the result of a new discharge.

121.   **Count7Defendants** failed to mention their previous suspensions of free product, or that their subcontractor **Groundwater Protection** has been negligent in the past in regards to drilling into underground tank supply/vapor lines, causing cross contamination between the contents in the tank and its surrounding soil.

122.   **Count7Defendants** knew, or should have known of the potential presence of free product at the **LSC-Plant** site, per communications that **Count7Defendants** engaged in with FDEP, when **Count7Defendants** requested that excavation be considered prior to well development.

123.   **Count7Defendants** knew that **Mr. Dulcio**, and the **FDEP** were relying on **Count7Defendants**'s expert opinion prior to initiating additional site assessments and confirmatory sampling to delineate the source of the new discharge (as well as the vertical and lateral extent of the new discharge) at the expense of **Mr. Dulcio**.

124.   **Count7Defendants** had a civil, professional as well as contractual duty to disclose to the **FDEP** and by extension **Mr. Dulcio**, the mistakes that were made, and what the best course of action should be.

125.   As a direct and proximate cause of **Count7Defendants** Fraudulent Concealment as described above, Mr. Dulcio sustained damages to a pre-existing injury, loss of wages, loss of income, loss of the enjoyment of life, damage to his personal reputation, damage to his business relationships, and a diminished sense of self value and worth.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count7Defendants** for compensatory damages and punitive damages (*If the court finds*

*it proper)* for a combined total within the jurisdictional limits of this Court, together with

cost of suit, interest, and any further relief as the Court deems proper.

**COUNT VIII**
**CONSPIRACY TO INTERFERE**
**WITH CIVIL RIGHTS**
*42 U.S.C. § 1985(c) (Amendments V-XIII-XIV)*
*v. (DIRECTOR2, MANAGER2, INSPECTOR1, FORMERAGENT1 & COUNSEL1)*

126.   **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in
paragraphs 1 through 50 as if stated fully and further alleges as follows:

127.   Defendants: **Director2**, **Manager2**, **Inspector1**, **FormerAgent1**, **Counsel1**(*In-Concert liability*) (hereinafter, "**Count8Defendants**").

128.   At all times material to this count "**Count8Defendants**" failed to pass the saucier
test (the 2-part test needed for government employees to qualify for *qualified
immunity*).

129.   **Count8Defendants** conspired together to interfere with **Mr. Dulcio's** civil rights
by way of *"Abuse or threatened abuse of law or legal process"* to involuntary
servitude/slavery *(Amendment XIII)*, and to a deprivation of Mr. Dulcio's liberties
without due process of law *(Amendments V & XIV)*.

130.   Definitions pertinent to this count are;

   a.   **Abuse or threatened abuse of law or legal process:**

   *22 U.S.C. § 7102(1) the use or threatened use of a law or legal process,
   whether administrative, civil, or criminal, in any manner or for any purpose
   for which the law was not designed, in order to exert pressure on another
   person to cause that person to take some action or refrain from taking some
   action.*

**b. Involuntary Servitude**:

*22 U.S.C. § 7102(8)* a condition of servitude induced by means of;

1.   *any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint.*

2.   *the abuse or threatened abuse of the legal process.*

**c. Liberty:**

*The power to think and act as one sees fit without restraint except by the laws of nature and interfering with someone else's rights.*

**131.   <u>Laws, and Amendments pertinent to this count are;</u>**

**d. 5th Amendment of the United States Constitution**;

*No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, **nor be deprived of life, liberty, or property, without due process of law;** nor shall private property be taken for public use, without just compensation.*

**e. 13th Amendment of the United States Constitution**;

*"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."*

**f.  14ᵗʰ Amendment (Section 1) of the United States Constitution**;

*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;* ***nor shall any state deprive any person of life, <u>liberty</u>, or property, without due process of law;*** *nor deny to any person within its jurisdiction the equal protection of the laws.*

**g.  *18 U.S.C. 241***;

*If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;*

**h.  *18 U.S.C. 242***;

*Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such*

> *person being an alien, or by reason of his color, or race, than are prescribed*
>
> *for the punishment of citizens, shall be fined under this title or imprisoned*
>
> *not more than one year, or both; ....*

132. By way of extortion/blackmail, and coercion, **Count8Defendants** conspired to compel **Mr. Dulcio** to perform a series of task that he (**Mr. Dulcio**) was not legally obligated nor responsible to perform.

133. The main task **Count8Defendants** conspired to have **Mr. Dulcio** to perform was a site assessment (hereinafter, "**Confirmatory Sampling**"), that **Mr. Dulcio** declined to perform, due to Florida Statutes Chapter 376.3078; (1c), (1d), (2b), (2b1), (2b2), (2b3), making the entire investigation portion of the site assessment/re-assessment a discretionary action for **Mr. Dulcio**, and a non-discretionary action for the **FDEP** to perform.

134. Florida Statutes Chapter 376.3078(13b) gives the **FDEP** the authority to diligently pursue **reimbursement** of all costs incurred, including the cost of investigation (site assessment/re-assessment) after the fact, not before the fact.

135. On April 16, 2021, the **FDEP** issued **Mr. Dulcio** 3 violations that were meritless and false.

136. On May 22, 2021, *(as mentioned in the factual allegations section)* Truist bank informed **HRI** that it will not be able to utilize the property as collateral due to the **LSC-Pant** site being in a non-compliance status.

137. This information made **PropertyOwner1** very upset with **Mr. Dulcio**, **PropertyOwner1** demanded that **Mr. Dulcio** resolve these violations immediately.

138. Prior to July 1, 2021, **Mr. Dulcio** resolved the violations and pleaded with the **FDEP** to place **LSC-Plant** site back into compliance, the **FDEP** declined, stating that; They (**FDEP**) believe there exist another violation (separate of what was in the **FDEP** warning letter).

139. Due to the perpetual state of non-compliance that the **FDEP** imposed on **Mr. Dulcio**, **Mr. Dulcio**'s personal, and business relationship with **PropertyOwner1** became very damaged and estranged.

140. July 18, 2021, **PropertyOwner1** demanded that Mr. Dulcio return the keys for the **LSC-Plant** site, due to a clause within the lease agreement that required **Mr. Dulcio** to be in compliance with all federal, state, and local laws. **Mr. Dulcio** begged **PropertyOwner1** to allow him to sell the business instead, due to **Mr. Dulcio** expecting the birth of his last child in August.

141. **PropertyOwner1** agreed and advised **Mr. Dulcio**, that he had until November 1, 2021, to sell the business.

142. **Mr. Dulcio** Marketed the business and found several prospective buyers.

143. **Mr. Dulcio** informed the **FDEP** of his desire to sell the business, and that he (**Mr. Dulcio**) understood that selling the business would not transfer the responsibility of resolving any previous violations.

144. On September 1, 2021 (Through a Conference Call), **FormerAgent1**, and **Inspector1** propositioned **Mr. Dulcio** that if he performed the **Confirmatory Sampling** that the **FDEP** would place him back into compliance status, **Mr. Dulcio** declined stating that; it was not **Mr. Dulcio**'s responsibility to perform the **Confirmatory Sampling**.

**145.**    On September 8, 2021 (through email), **Inspector1** re-requested that I (**Mr. Dulcio**) perform the **confirmatory sampling.**

**146.**    On October 11, 2021 (through email), **Manager2** requested that I (**Mr. Dulcio**) perform the **confirmatory sampling** if not than my eligibility in the DSCP would be in jeopardy.

**147.**    On October 12, 2021 (through email), **Mr. Dulcio** informed the **FDEP** through **Manager2** that he (**Mr. Dulcio**) could not afford to perform the **Confirmatory Sampling**, and then requested to know what law, statute, or ordinance is requiring **Mr. Dulcio** to perform them.

**148.**    On October 19, 2021 (through email), **Manager2** advised **Mr. Dulcio** that he was legally obligated to perform the **Confirmatory Sampling**, and sited two Florida Administrative Code Rules (62-730.225, 62-780.600), neither of the administrative codes supported **Manager2's** assertions, within the same aforementioned email **Manager2** threated **Mr. Dulcio** by stating that if **Mr. Dulcio** does not perform the **Confirmatory Sampling** that the **FDEP** will move forward with the support of their Office of General Counsel to initiate an Administrative proceeding.

**149.**    On October 20, 2021 (through email), **Manager2** advised **Mr. Dulcio** that if he was not going to perform the **Confirmatory Sampling**, that the **FDEP** will issue a formal Notice of Violation (step 1 in the administrative process).

**150.**    On October 25, 2021 (through email), **Director2** made the same request for **Mr. Dulcio** to perform the **Confirmatory Sampling**.

**151.**    On June 27, 2022 (through email), **Counsel1** made the same request to **Mr. Dulcio** to perform the **confirmatory sampling**. When I (**Mr. Dulcio**) explicitly requested

from Counsel1 the law, statute, or ordinance that requires this of me, I received a response to other elements within my email, but not a response to that question.

152.    As a direct and proximate cause of this conspiracy, I (**Mr. Dulcio**) suffered mental & emotional anguish, financial hardships, damage to a pre-existing injury, damage to reputation, loss of business, loss of business relationships, loss of profits, loss of income, loss of enjoyment of life, and a diminished sense of self value & worth.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count8Defendants** for compensatory damages and punitive damages *(If the court finds it proper)* for a combined total within the jurisdictional limits of this Court, together with cost of suit, interest, and any further relief as the Court deems proper.

**COUNT VIV**
**ACTION FOR NEGLECT TO PREVENT**
*42 U.S.C. § 1986 (COUNTS V-VI -VIII & X OF THIS COMPLAINT)*
*v. (MANAGER1, SECRETARY1, COUNSEL1, COUNSEL2, PROGRAMPG1)*
*(PROGRAMDIRECTOR1, CONTRACTMANAGER1 & FDEP-SECRETARY)*

153.    **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

154.    The defendants relevant to this count are **Manager1, Secretary1, Counsel1, Counsel2, ProgramPG1, ProgramDirector1**, **ContractorManager1**, and **FDEP-Secretary** (hereinafter, "**Count9Defendants**").

155.    At all times material to this count "**Count9Defendants**" failed to pass the saucier test (the 2-part test needed for government employees to qualify for *qualified immunity*).

156.    **Laws and Amendments pertinent to this count;**

 i.    *42 U.S.C. § 1986:*

*Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, **if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act**, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; **and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action**;…*

157.   This action has been commenced within a year from when the cause of action accrued.

158.   On June 28, 2022, **Mr. Dulcio** composed an email (hereinafter, "**EmailChain**") to **Count9Defendants** within this email **Mr. Dulcio** communicated his frustrations with the way he has been treated by the **FDEP** and for the purposes of transparency, and continuity **Mr. Dulcio** included 2 additional participants (**Secretary1**, and **Counsel2**), in hopes that these individuals would intervene and assist in ending the undeserved punishment that **Mr. Dulcio** was being subjected to, but unfortunately for Mr. Dulcio these individuals would do nothing toward ending **Mr. Dulcio** agony.

159.   On July 5, 2022, **Mr. Dulcio** replied to the **EmailChain** with an email  that outlined in much detail all the technical errors that the **FDEP** had within their understanding of hazardous waste and the mistakes that were made in site

characterization for the **LSC-Plant** site. In hopes of finally bringing this matter to a close.

160. On Oct 1, 2022, **Mr. Dulcio** replied to the **EmailChain** which encompassed all defendants, venting his frustration and disappointment with the **EPA**, and **FDEP** and their lack of care for the environment, and above all **Mr. Dulcio**, and pleaded for some assistance in understanding why the departure from standard protocol and procedures, at the end of **Mr. Dulcio**'s email response he (**Mr, Dulcio**) included as a new participant **Michael S. Regan (*Current EPA Administrator*)**.

161. **Mr. Dulcio** was very deliberate on two separate occasions to communicate to all recipients via the **EmailChain** that he (**Mr. Dulcio**) has a learning disability and would greatly appreciate some additional assistance toward understanding why this process was taking place, but no one would acknowledge **Mr. Dulcio** plight.

162. But despite **Mr. Dulcio**'s cries and subsequent pleas for help no one would come to **Mr. Dulcio**'s aid or rescue from the tyranny of the **FDEP**.

163. As a direct and proximate cause of this Neglect to Prevent **Mr. Dulcio** suffered financial, mental, and emotional hardships.

   **WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count9Defendants** for compensatory damages and punitive damages (*If the court finds it proper*) for a combined total within the jurisdictional limits of this Court, together with cost of suit, interest, and any further relief as the Court deems proper.

## COUNT X
### DEPRIVATION OF RIGHTS
### UNDER THE COLOR OF LAW
*42 U.S.C § 1983 (Amendments XIII, XIV)*
*v. (DIRECTOR1, DIRECTOR2, MANAGER2, INSPECTOR1 & COUNSEL1)*

**164.**    **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

**165.**    The defendants relevant to this count are: **Director1**, **Director2**, **Manager2**, **Inspector1**, and **Counsel1** (hereinafter, "**Count10Defendants**")

**166.**    At all times material to this count "**Count10Defendants**" failed to pass the saucier test (the 2-part test needed for government employees to qualify for *qualified immunity*).

**167.**    <u>**Laws and Amendments pertinent to this count are;**</u>

    **j.**    **8th Amendment of the United States Constitution**;

        *Excessive bail shall not be required, nor **excessive fines imposed**, **nor cruel and unusual punishments inflicted**.*

    **k.**    **14th Amendment of the United States Constitution;**

        *No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws.***

    **l.**    **Florida Statutes Chapter 376.3078(3)(a);**

        *In accordance with the eligibility provisions of this section, a real property owner, nearby real property owner, or **person who owns or operates**, or who otherwise could be liable as a result of the operation of,*

> *a drycleaning facility or a wholesale supply facility **is not liable for or***
>
> ***subject to administrative or judicial action** brought by or on behalf of any*
>
> *state or local government or agency thereof or by or on behalf of any*
>
> *person to compel rehabilitation or pay for the costs of rehabilitation of*
>
> *environmental contamination resulting from the discharge of drycleaning*
>
> *solvents.*

**168.**   **Mr. Dulcio** was subjected to *excessive fines imposed* when the defendant(s);

   **a.**   Issued **Mr. Dulcio** a Notice of Violation with a 5 count Administrative Penalty Assessment (hereinafter, "**APA**") totaling the amount of $81,460.00.

      i.   <u>**Count I of APA:**</u> 403.727(3)(a), Fla. Stat., of $4,250.00 for failure to allow site access for inspection.

      ii.   <u>**Count II of APA:**</u> 403.727(3)(a), Fla Stat., of $710.00 for failure to keep records on-site and readily available for inspection to the Department.

      iii.   <u>**Count III of APA:**</u> 403.727(3)(a), Fla. Stat., of $500.00 for failure to provide secondary containment for waste-containing solvents at a drycleaning facility.

      iv.   <u>**Count IV of APA:**</u> 403.727(3)(a), Fla. Stat., of $37,500.00 for failure to comply with any departmental standard for discharges of pollutants.

      v.   <u>**Count V of APA:**</u> 403.727(3)(a), Fla. Stat., of $37,500.00 for failure to properly treat or dispose of hazardous waste.

**169.**   **Mr. Dulcio** was subjected to *cruel and unusual punishment* when the defendant(s);

1. Deliberately violated Mr. Dulcio for things that were "Areas of Concerns" and not violations *(Manager2, & Inspector1)*.

2. Deliberately kept **Mr. Dulcio** in non-compliance status for the purposes of classifying/re-classifying him (**Mr. Dulcio**) as a significant non-complier *(Director1, Director2, Manager2, Inspector1)*.

3. Initiating a criminal investigation into **Mr. Dulcio** without first performing a proper investigation *(Director1)*.

4. Initiating an Administrative procedure against **Mr. Dulcio** despite **Mr. Dulcio** having liability protection as a result of being in the Drycleaner Solvent CleanUp Program *(Director1 & Counsel1)*.

5. "*Torturous Interference with a Business Relationship*" by deliberately involving **FHRI** into an unlawful Administrative Proceeding.

170. <u>**For purposes of context:**</u>

a. Piney Point Phosphate Processing Facility dumped 215 million gallons of waste (pollution contaminated water) into Port Manatee and Tampa Bay in March 2021.

b. Within that same year (2021) the morality rate of Florida's precious manatee rose to a staggering 1,101 manatee deaths which is 1.7 times the usual five-year average.

c. The Florida manatees are protected by the **Florida Manatee Sanctuary Act** *(§379.2431(2), Florida Statutes)* and are federally protected by both the **Marine Mammal Protection Act** and the **Endangered Species Act**.

    **d.** On August 8, 2021, the **FDEP** commenced a civil suit against HRK Holdings, LLC (hereinafter, "**HRK**") (the owner(s) of Piney Point Phosphate Processing Facility).

    **e.** Within the **FDEP's** complaint, the **FDEP** alleges numerous acts, and omissions by **HRK** which contributed to and/or exacerbated the contamination at the facility including unpermitted discharges.

    **f.** And in response to the aforementioned complaint/conduct the **FDEP** (per the cover sheet of the filed complaint) estimates the "***amount of claim***" to be between \$30,001-\$50,000.

**171.** On February 10, 2022, **Count10Defendants** subjected **Mr. Dulcio** to an unlawful administrative proceeding by way of the issuance of a "*Notice of Violation, Orders for Corrective Action and Administrative Penalty Assessment*" served on **Mr. Dulcio** (*via* Certified Mail Number: 91 7199 9991 7030 9095 8663), where **Mr. Dulcio** was assessed (based on a suspicion) an administrative penalty in the amount of \$81,460.00.

**172.** **Mr. Dulcio** alleges that **Count10Defendants** violated his *8th amendment* rights by subjecting him to *"cruel and unusual punishment"* when they initiated an administrative proceeding against Mr. Dulcio, and in furtherance of the *"cruel and unusual punishment"* **Count10Defendants** *"impose excessive fines"* on **Mr. Dulcio**.

**173.** As a direct and proximate cause of **Count10Defendants** actions Mr. Dulcio suffered damage to a pre-existing injury, severe financial hardship, mental and emotional anguish, and a loss of trust in the United States government.

WHEREFORE, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count10Defendants** for compensatory damages and punitive damages *(If the court finds it proper)* for a combined total within the jurisdictional limits of this Court, together with cost of suit, interest, and any further relief as the Court deems proper.

**COUNT XI**
**FLORIDA RICO ACT**
*Section 895.05(6) Fla. Stat.*
*v. (Count4Defendants & Count10Defendants)*

174.   **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

175.   This is a cause of action brought under § *895.05(6) Fla. Stat.* with the assistance of *28 U.S.C. § 1367.*.

**The definitions and statutes pertinent to this count**

176.   **Enterprise**: *Section 895.02(5) Fla. Stat.* Any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities. A criminal gang, as defined in s. 874.03, constitutes an enterprise.

177.   **Pattern of racketeering activity**: *Section 895.02(7) Fla. Stat.* Engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least

one of such incidents occurred after October 1, 1977, and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.

178. **Racketeering activity:** *§ 895.02(8) Fla. Stat.* To commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit: (a) Any crime that is chargeable by petition, indictment, or information under the following provisions of the Florida Statutes: (4) *§ 403.727(3)(b),* relating to environmental control, (41) *§ 836.05*, relating to extortion, (42) *Chapter 837*, relating to perjury, and (43) *Chapter 838*, relating to bribery and misuse of public office, (51)(b) Any conduct defined as "racketeering activity" under *18 U.S.C. § 1961(1).*

179. **§ 403.727(3)(b**): Any person who knowingly or by exhibiting reckless indifference or gross careless disregard for human health:

   1. Transports or causes to be transported any hazardous waste, as defined in s. 403.703, to a facility which does not have a permit when such a permit is required under *s. 403.707* or *s. 403.722*;

   2. Disposes of, treats, or stores hazardous waste:

      i. At any place but a hazardous waste facility which has a current and valid permit pursuant to *s. 403.722*;

      ii. In knowing violation of any material condition or requirement of such permit if such violation has a substantial likelihood of endangering human health, animal or plant life, or property; or

55

iii. In knowing violation of any material condition or requirement of any applicable rule or standard if such violation has a substantial likelihood of endangering human health, animal or plant life, or property;

3. Makes any false statement or representation or knowingly omits material information in any hazardous waste application, label, manifest, record, report, permit, or other document required by this act;

4. Generates, stores, treats, transports, disposes of, or otherwise handles any hazardous waste and who knowingly destroys, alters, conceals, or fails to file any record, application, manifest, report, or other document required to be maintained or filed for purposes of compliance with this act; or

5. Transports without a manifest, or causes to be transported without a manifest, any hazardous waste required by rules adopted by the department to be accompanied by a manifest is, upon conviction, guilty of a felony of the third degree, punishable for the first such conviction by a fine of not more than $50,000 for each day of violation or imprisonment not to exceed 5 years, or both, and for any subsequent conviction by a fine of not more than $100,000 per day of violation or imprisonment of not more than 10 years, or both.

180. **§ 836.05: Threats and/or extortion** Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary

advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

181. **Maliciously:** Mean to wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage may be caused to another person or the property of another person.

182. **Chapter 837.06:** "*False official statements*" Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

183. **Chapter 838.022:**

   1. It is unlawful for a public servant or public contractor, to knowingly and intentionally obtain a benefit for any person or to cause unlawful harm to another, by:

      a. Falsifying, or causing another person to falsify, any official record or official document;

      b. Concealing, covering up, destroying, mutilating, or altering any official record or official document, except as authorized by law or contract, or causing another person to perform such an act; or

      c. Obstructing, delaying, or preventing the communication of information relating to the commission of a felony that directly involves or affects the government entity served by the public servant or public contractor.

**2.** (b) For the purpose of Chapter 838, An "Official record or official document" includes only public records.

**184.** __18 U.S.C. § 1961(1)__: "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

**185.** **Mr. Dulcio** incorporates by reference paragraphs;

    *a.* "68 to 76" of Count "3" *(of this complaint)*

    *b.* "76 to 88" of Count "4" *(of this complaint)*

    *c.* "100 to 112" of Count "6" *(of this complaint)*

    *d.* "127 to 152" of Count "8" *(of this complaint)*

    e. "165 to 173" of Count "10" *(of this complaint)*

**186.** The defendants relevant to this count are: **Count4Defendants** (Arcadis, Groundwater Protection, and EarthTech), and **Count10Defendants** (*Director1, Director2, Manager2, Inspector1 & Counsel1*) (Collectively hereinafter, "**CriminalEnterprise**").

**187.** At all times material to this count the **CriminalEnterprise** satisfied the definition of an **Enterprise** pursuant to *Section 895.02(5) Fla. Stat..* and their collective actions satisfied the definition of **Racketeering Activity** pursuant to *§ 895.02(8) Fla. Stat.* and **Pattern of Racketeering Activity** pursuant to *Section 895.02(7) Fla. Stat.*

**188.**   As a direct and proximate cause of the act(s) and/or action(s) and/or omission(s) of the **CriminalEnterprise, Mr. Dulcio** suffer irreparable harm to his finances, business relationships, interpersonal relationships, as well as damage to a pre-existing injury.

**WHEREFORE**, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **CriminalEnterprise** for the granting of injunctive relief against **Count4Defendants** for the suspension and/or revocation of **ALL**; licenses, permits, and/or prior approval granted to **Count4Defendants** by any agency of the state of Florida (*pursuant to 895.05(1)(d) Fla. Stat.*), and for the forfeiture of their "*Corporate Charter*" organized under Florida law, or the revocation of a certificate authorizing a foreign corporation to conduct business within the state of Florida, upon finding that the board of directors or a managerial agent acting on behalf of the corporation, in conducting the affairs of the corporation, has authorized or engaged in conduct in violation of *§ 895.03* and that, for the prevention of future criminal activity, the public interest requires the charter of the corporation forfeited and the corporation dissolved or the certificate revoked *(pursuant to 895.05(1)(e) Fla. Stat.),* in continuance of the injunctive relief **Mr. Dulcio** also request a civil forfeiture of All property (real and/or personal) including money, used in the course of, intended for use in the course of, derived from, or realized through conduct in violation of §§ *895.01-895.05 (pursuant to 895.05(2)(a) Fla. Stat.).* also a criminal referral against **CriminalEnterprise** to the Federal Bureau of Investigation ("*FBI*") "Criminal" division, and a referral to the "Forensic Accounting" division of the FBI for an audit of all FDEP cases involving **CriminalEnterprise,** due to the brazen nature of **CriminalEnterprise** actions **Mr. Dulcio** strongly suspects he is not the only victim. Lastly Mr. Dulcio seeks nominal damages *(If*

*the court finds it proper),* special damages together with cost of suit, interest, and any further relief as the Court deems proper.

**COUNT XII**
**ACTION FOR TREBLE DAMAGES**
**RESULTING FROM VIOLATIONS OF 18 U.S.C. § 1962**
*18 U.S.C. § 1964(c)*
*v. (Count4Defendants)*

189. **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50, 78 through 88, and 175 through 188 as if stated fully and further alleges as follows:

190. The defendants pertinent to this count are Count4Defendants (hereinafter, "**Count12Defendants**")

191. This is an action for treble damages in accordance with 18 U.S.C. § 1964.

192. **18 U.S.C. § 1964(c) states;**

> Any person injured in his business or property by reason of a violation of section **1962** of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee,

193. **18 U.S.C. § 1962(a) states;**

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity….

194. **18 U.S.C. § 1962(d) states;**

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**195.** As a direct and proximate cause of the violations outlined in Count 11 of this complaint, **Count4Defendants** are in violation of both 18 U.S.C.; § 1962(c) & § 1962(d).

**196.** And as a direct and proximate cause of the violations mentions in paragraph 195, **Mr. Dulcio** suffered injury to his business and property.

**WHEREFORE** Mr. Dulcio respectfully demands trial by jury against **Count12Defendants** for treble damages, and punitive damages (If the court finds it proper) plus the cost of suit, interest, and legal costs for a combined limit within this courts judicial limits.


### COUNT XIII
### ACTION FOR CORRECTIVE ACTION, AND
### ADMINISTRATIVE PENALTY ASSESSMENT
*33 U.S.C. § 1321(g)*
*v. (EPA & FDEP)*

**197.** **Mr. Dulcio** reiterates and hereby incorporates the allegations contained in paragraphs 1 through 50 as if stated fully and further alleges as follows:

**198.** The defendants relevant to this count are: **EPA**, and **FDEP** (hereinafter, "**Count13Defendants**")

**199.** **FDEP** is *respondeat superior* for **Arcadis**.

**200.** **Mr. Dulcio** is authorized to bring this action by-way of *33 U.S.C. § 1365(a),* in response to the **FDEP** causing a violation of an "*effluent standard or limitation*",

**201.** **33 U.S.C. § 1321** definitions pertinent to **Count XIII**;

    **a.** (a)(2) "***Discharge***" includes, but is not limited to, any spilling, leaking, pumping, pouring, emitting, emptying or dumping.

b.      (a)(7) "***Person***" includes an individual, firm, corporation, association, and a partnership.

c.      (a)(10) "***Onshore Facility***" means any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land.

d.      (a)(14) "***Hazardous Substance***" means elements and compounds which, when discharged in any quantity into or upon the navigable **"Waters of the United States"** or adjoining shorelines or the waters of the contiguous zone or in connection with activities under the Outer Continental Shelf Lands Act [43 U.S.C. 1331 et seq.] or the Deepwater Port Act of 1974 [33 U.S.C. 1501 et seq.], or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States (including resources under the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. 1801 et seq.]), present an imminent and substantial danger to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, shorelines, and beaches

202.   Per the **EPA**'s website groundwater is often hydrologically connected to navigable waters…

203.   … therefore, groundwater has the potential to migrate and contaminate navigable waters.

204.   **Mr. Dulcio** has complied with all the prerequisites of this citizens suit in accordance with *33 U.S.C. § 1365 (b1) & (b2)*

205.   To date the **EPA** nor the **State** nor the **FDEP** has commenced or is diligently prosecuting a civil and/or criminal action in a court of the United States, or a state to require compliance with the standard.

206.   The **LSC-Plant** site is a **DNAPL** site located above a sole source aquifer (Biscayne Aquifer).

207.   Due to the site being a **DNAPL** site there was a level of care and caution that should have been exercised in the remediation of the site that was not utilized and/or satisfied by both **Arcadis** and the **FDEP**.

208. Between December 3, 2018 through January 11, 2019 **Arcadis** constructed 5 wells at the **LSC-Plant** site.

209. On September 9, 2020, **Arcadis** returned and constructed 3 additional wells, and abandoned 1 well, for a total of 8 wells constructed, with only 7 wells active.

210. All wells due to where and how they were developed/constructed constitutes 8 violations of 33 U.S.C. § 1321 paragraph (3).

211. Due to the catastrophic harm to the environment these violations warrant the assessment of a class II penalty under subparagraph(A) which may not exceed $10,000 per day per violation, but due to the gross negligence involved the $125,000 cap should not apply.

212. The number of days from the development/construction of the first 5 wells (January 11, 2019) until today equal 1,438 days, when multiplied by the number of wells (1,438 x 5) equal 7,190, when multiplied by the $10,000 per day civil penalty under subsection (a) equal $71,900,000.

213. The number of days from the development/construction of the last 3 wells (September 10, 2020) until today equal 830 days, when multiplied by the number of wells (830 x 3) equal 2,490, when multiplied by the $10,000 per day civil penalty under subsection (a) equal $24,900,000.

214. Based on the law, and the circumstances **Mr. Dulcio** seeks for the **EPA to** properly assess the **FDEP** fines and penalties in the amount of $96 million dollars to be paid to the United States government.

215. As a direct and proximate cause of the gross negligence of the **FDEP** a condition that is the equivalent of a discharge/new discharge was achieved.

**216.**    Causing the navigable waters of the United States to become highly contaminated with copious amounts of hazardous waste/substances.

**217.**    <u>33 U.S.C. § 1321(g) states;</u>

"[I]n any other case the liability of such third party shall not exceed the limitation which would have been applicable to the owner or operator of the vessel or the **onshore** or offshore facility from which the discharge actually occurred if such owner or operator were liable."

**218.**    <u>33 U.S.C. § 1321(f)(2)(c);</u>

For the removal of such oil or **substance** by the **United States Government** in an amount not to exceed $50,000,000, **except that where the United States can show that such discharge was the result of** <u>willful negligence</u> **or** <u>willful misconduct</u> within the privity and knowledge of the owner, such owner or operator shall be liable to the **United States Government** for the full amount of such costs. The **United States** may bring an action against the owner or operator of such facility in any court of competent jurisdiction to recover such costs.

**219.**    The **FDEP's** action(s) and/or inaction(s) and/or omission(s) were the direct and proximate cause of the spike in Perchloroethylene, Trichloroethylene, 1,2-Dichloroethene, and Vinyl Chloride.

**220.**    <u>For the purposes of providing context;</u>

The class action Camp Lejeune lawsuit that has garnered a lot of attention in the media within the last year stems from a dry cleaners named "ABC Cleaners"

(hereinafter, "**ABC**"), which was located up-gradient/up-stream of the actual Marine Corps Base Camp Lejeune, Military Base (hereinafter, "**Camp Lejeune**"). The primary chemicals released by **ABC** were Perchloroethylene, Trichloroethylene, 1,2-Dichloroethene, and Vinyl Chloride.

The health issues associated with people who drank from the waters of camp Lejeune are, *but are not limited to*;

    **1.**    Infertility in Woman

    **2.**    Breast Cancer

    **3.**    Cervical Cancer

    **4.**    Kidney Cancer

    **5.**    Liver Cancer

    **6.**    Bladder Cancer

    **7.**    Lung Cancer

    **8.**    Renal Toxicity

**221.**    The chemicals of concern at **Camp Lejeune** peaked at;

    215 μg/L for Perchloroethylene (**PERC** or **PCE**)

    1,400 μg /L for Trichloroethylene (**TCE**)

    435 μg /L for 1,2-Dichloroethene (**1,2-DCE**)

    67 μg /L for Vinyl Chloride (**VC**)

**222.**    Florida's "effluent standard or limitations" are:

    3 μg/L for PCE

    3 μg/L for TCE

    70 μg/L  for 1,2-DCE,

1 µg/L for VC

223. The chemicals of concern at the **LSC-Plant** site peaked at;

72,000 µg/l for Perchloroethylene (**PERC** or **PCE**) *FDEP-MW003*

3,600 µg /l for Trichloroethylene (**TCE**) *AOTC-MW007*

10,000 µg /l for 1,2-Dichloroethene (**1,2-DCE**) *AOTC-MW007*

2,100 µg /l for Vinyl Chloride (**VC**) *AOTC-MW007*

224. Due to the actions of the FDEP there currently exist a condition in Florida's waterways that is exponentially worst than what was present at Camp Lejeune when contamination there was at it's peak.

225. **Mr. Dulcio** has made numerous attempts to communicate with the **EPA**, and the **FDEP** to promptly resolve this matter that is of great urgency, for the purposes of protecting the environment and the public's health but have been met with variating degrees of stonewalling, lies, obfuscation, accusations of being the culprit (cause of the discharge (the responsible party)), and threats of civil and criminal prosecution while at the same time having his (**Mr. Dulcio's**) Civil Rights violated.

226. **Mr. Dulcio** has committed no crimes, or violations but has been treated in a manner that isn't deserving of a human being. Despite the mistreatment **Mr. Dulcio** endured, he (**Mr. Dulcio**) continued to cooperate with every lawful request made by the **FDEP**, even months after the **FDEP** ran **Mr. Dulcio**'s businesses into the ground.

227. For the "**Protection of the United States Interest**" and in accordance with *33 U.S.C. § 1365(c)(3)*, I Marc M. Dulcio will serve a copy of this complaint to the

Attorney General of the United States (*Merrick B. Garland* ) and the **EPA** Administrator (*Michael S. Regan*).

**228.**  **Mr. Dulcio** has exhausted all administrative options, and prays, that this *prayer for relief* can bring some awareness and change.

WHEREFORE, Plaintiff, **Mr. Dulcio** respectfully demands trial by jury against **Count13Defendants** for nominal damages *(If the court finds it proper)*, injunctive relief against the **FDEP** for the immediate remediation of the **LSC-Plant** site, and improved policies and procedures for identifying free product (both DNAPL, and LNAPL) for the benefit of the public health, injunctive relief against the **EPA** to properly assess and then fine the **FDEP**; the full amount of cost to restore the environment, civil penalties, and administrative penalties, and a temporary block on all memorandum of understanding and/or memorandum of agreements between the **EPA** and the **FDEP** until a comprehensive training can take place. Lastly if the court finds it proper to award **Mr. Dulcio** expert witness fees, cost of suit, and any further relief as the Court deems proper.

## SUMMARY OF
## DAMAGES/LOSSES SUFFERED

**229.**  As a direct and proximate result of the act(s) and/or omission(s) and/or indifference(s) of ALL Defendants Mr. Dulcio suffered;

    **a.** Lost of his government contracts, which required him to be in compliance with ALL federal, and state laws.

    **b.** Lost of the ability to bid on any additional government contract, until the violations were resolved.

<u>c.</u>  Lost of his exclusive textile restoration contract with a reputable water restoration company, that services all of Florida.

<u>d.</u>  Lost of the LSC-Plant, which performed all of his dry cleaning, laundry services, and alterations for LSC-DropOff-1, LSC-DropOff-2.

<u>e.</u>  Lost of LSC-DropOff-1

<u>f.</u>  Lost of LSC-DropOff-2

<u>g.</u>  Lost of LSC-Remote-Drop

<u>h.</u>  Damage to Business relationships

<u>i.</u>  Damage to Business Reputation.

<u>j.</u>  Mental Anguish

<u>k.</u>  Embarrassment

<u>l.</u>  Loss of quality of life

<u>m.</u>  Loss of enjoyment of life

<u>n.</u>  Loss of Opportunities

<u>o.</u>  Dissociation, Exhaustion, Lack of Motivation

<u>p.</u>  Anxiety

<u>q.</u>  Confusion

<u>r.</u>  Depression

<u>s.</u>  A diminished sense of self value/worth

<u>t.</u>  Lost of trust in the government

<u>u.</u>  Feelings of Hopelessness/Helplessness

<u>v.</u>  An inability to provide for himself and his family

## PRAYER FOR RELIEF

**Mr. Dulcio** has the understanding that pleadings by *Pro Se* litigants, "*...are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed. "Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing Fernandez v. United States, 941 F.2d 1488, 1491 (11th Cir. 1991)),* but out of an abundance of respect for the court, and an abundance of caution due to the historical slippery nature of the defendant (the **FDEP**) **Mr. Dulcio** thought it only proper and right to construct this complaint in the most legally, and technically accurate way (as though written by an attorney).

**WHEREFORE** Plaintiff, **Mr. Dulcio** hereby respectfully demands trial by jury in the above-style action.

Dated this 3rd day of January, 2023

By: _____

Marc M. Dulcio • *Pro Se* Litigant

**Marc M. Dulcio**

70 N.E. 131st Street

North Miami, FL 33161

Cellphone: (561) 660-4855

Primary Email Address:

Info@WarrantyRepairX.com

Secondary Email Address:

MarcDulcio@Hotmail.com

69