**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-81908-RLR**

MARC M. DULCIO,

       Plaintiff,

v.

ENVIRONMENTAL PROTECTION
AGENCY, et. al.,

      Defendants.      /
_____

**ARCADIS U.S., INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED**
**COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

*/s/ Daniel C. Johnson*
Daniel C. Johnson (FBN 522880)
Email: djohnson@carltonfields.com
 Carlton Fields, P.A.
200 S. Orange Avenue
Suite 1000
Orlando, FL 32801
Telephone: (407) 849-0300
Facsimile: (407) 648-9099

*Counsel for Defendant Arcadis U.S., Inc.*

Defendant, Arcadis U.S., Inc. ("Arcadis"), through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 8 and 12, and S.D. Fla. L. R. 7.1, hereby moves to dismiss Plaintiff's Amended Complaint (D.E. 7) ("Amended Complaint" or "Comp.").

## I.    <u>INTRODUCTORY STATEMENT</u>

Broadly speaking, Plaintiff's Amended Complaint attempts to assert claims that have their genesis in alleged environmental contamination to real property upon which Plaintiff's company held a leasehold interest and operated a dry cleaning business ("Site"). The Amended Complaint attempts to assert claims against 21 Defendants in 13 counts. Arcadis is a Defendant in 6 counts.

Arcadis is an environmental engineering company that provided certain "Bureau of Waste Cleanup program services" with respect to the Site for the Florida Department of Environmental Protection ("FDEP").

All of the claims asserted against Arcadis should be dismissed on multiple grounds.

First, Arcadis' services for FDEP were all performed pursuant to a written contract ("Contract"). Declaration of Douglas McGlone attached as Exhibit A ("McGlone Dec.") ¶¶ 4-7 and Exhibit 1 thereto. As a matter of law, Arcadis is deemed to be an agent of the State of Florida ("State") and the Eleventh Amendment to the United States Constitution ("Eleventh Amendment") prohibits this Court from considering any of the claims against Arcadis.

Second, Plaintiff does not possess standing to assert his claims because they could not be assigned to Plaintiff by his company under Florida law.

Third, Plaintiff does not possess standing to assert his declaratory judgment claim (Count I) because there is no required "case or controversy" and it improperly seeks an advisory opinion.

Fourth, Plaintiff's claims are barred by sovereign immunity.

Fifth, none of the claims against Arcadis state claims upon which relief may be granted.

## II.    THE CLAIMS AGAINST ARCADIS SHOULD BE DIMISSED BECAUSE THE COURT DOES NOT POSSESS SUBJECT MATTER JURISDICTION

### A.  Applicable Legal Standards

Federal courts are courts of limited jurisdiction.  *Univ. of S. Alabama v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir. 1999).  "When a federal court acts outside its statutory subject matter jurisdiction, it violates the fundamental constitutional precept of limited federal power" and "is powerless to continue."  *Id.*  Thus, a court should inquire whether it has subject matter jurisdiction "*at the earliest possible stage in the proceeding." Id.* (emphasis supplied).  *See also Bautista v. Fantasis Enters., Inc.,* 13-61218-Civ-Brannon, 2013 WL 12124616, * 1 (S.D. Fla. July 30, 2013) ("If jurisdiction is found to be lacking, a court cannot proceed at all; its sole remaining duty is to state that it lacks jurisdiction and dismiss the case.").

Here, all claims against Arcadis must be dismissed for lack of jurisdiction for two reasons. First, the Eleventh Amendment prohibits this Court from considering Plaintiff's claims against Arcadis.  Second, Plaintiff does not have standing to pursue his asserted claims against Arcadis.

### B.    The Eleventh Amendment Prohibits This Court From Considering Plaintiff's Claims Against Arcadis

Plaintiff's claims must be dismissed because, as a matter of law, Arcadis was acting as an agent of the State, specifically contracted by FDEP to undertake certain environmental site assessment actions.  Thus, Arcadis is entitled to Eleventh Amendment immunity.

"The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state."  *Walker v. Florida State Univ. Sch.*, 2004 WL 3135466, at *1 (N.D. Fla. 2004) (quoting *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir. 1990)).  The Eleventh Amendment protects both states and their agencies from such suits.  *Williams v. District Board of Edison Community College*, 421 F.3d 1190, 1192 (11th Cir.

2005). Eleventh Amendment immunity can only be lost if Congress abrogates a state's immunity as to a particular claim or if waived by the state. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55, 116 S. Ct. 1114, 134 L.Ed. 2d 252 (1996).[1]

Arcadis is entitled to this immunity because, as recognized by the Eleventh Circuit, private corporations, even though they are not directly controlled by the state or funded by the state, are still protected by Eleventh Amendment immunity when they are acting as agents of the State. *Shands Teaching Hosp. and Clinics Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000); *Lake v. Skelton*, 840 F. 3d 1334, 1337 (11th Cir. 2016) (citing *Shands* and clarifying that *Manders v. Lee*, 338 F. 3d 1304, 1308 (11th Cir. 2003) later clarified the correct test used to determine if the Eleventh Amendment is extended to private corporations).

As explained in *Lake*, in deciding whether private corporations are acting as arms of the State for Eleventh Amendment immunity purposes, the Court must first determine "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Lake*, 840 F. 3d at 1337. Then the Court must determine whether "the defendant is an 'arm of the state' in its performance of the state function by considering four factors: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.*

### 1.        Arcadis was Engaged in a State Function

Here, Arcadis provided its "Bureau of Waste Cleanup program services" pursuant to the detailed written Contract with FDEP. Contract, p. 1. Arcadis acted on behalf of, and under the direction of FDEP, on those properties assigned to Arcadis by FDEP.[2] Indeed, Plaintiff alleges

---

[1] Florida has not waived sovereign immunity: Fla. Stat 768.28(18).

[2] Fla. Stat. § 376.3078 is Florida's drycleaner solvent cleanup program ("Program"). That section comprehensively provides for the State to fund and perform the assessment and cleanup of certain

that FDEP "assigned" Plaintiff's property to, and directed, Arcadis to perform environmental assessments and undertake other actions on Plaintiff's property on behalf of FDEP.  (Comp. at ¶¶10, 13, 16, 26, 29, and 33.)

Thus, without question, Arcadis' actions, of which Plaintiff complains, were explicitly taken under FDEP direction pursuant to the Contract.

## 2.       Arcadis was Acting as an "Arm of the State"

Arcadis satisfies the four-factor *Manders* test and was acting as an "arm of the state."

The first factor is satisfied because, as explained in *Shands*, the inquiry into a private corporation in the Eleventh Amendment context is not the nature of a corporation's status in the abstract, but its function or role in a particular context.  *Shands,* 208 F.3d at 1311.

Florida statutorily extends sovereign immunity protections to "corporations primarily acting as instrumentalities or agencies of the state."  Fla. Stat. §768.28(2) (2022); *Lovelace v. G4S Secure Solutions (USA) Inc.*, 320 So.3d 178 (2021) (whether a contractor is an agent of the state for purposes of Section 768.28, "turns on the degree of control retained or exercised by the agency" and "the right to control, not the actual control.").   Under the Program, FDEP is statutorily committed to perform the assessment and cleanup of certain drycleaning facilities.  Fla. Stat. § 376.3078.  Arcadis has been providing services to FDEP for the Program pursuant to the Contract since 2010.  Ex. 1 to McGlone Dec.  All of the services Arcadis performed with respect to the Site during the time period alleged in the Amended Complaint were pursuant to the Contract.  McGlone

---

dry cleaning facilities that have timely applied for, and were found to be eligible for, the Program. Subsection (2)(b) provides FDEP "shall obligate moneys" for covered drycleaner cleanup.  The facility at issue in this case had been determined by the FDEP to be eligible for the Program at the time FDEP directed Arcadis to perform assessment activities at this facility.  Compl. ¶ 35 and McGlone Dec. ¶¶ 4-7

Dec. ¶¶ 4-7.  Thus, Arcadis is performing services to FDEP to meet FDEP's statutory assessment and cleanup duties.

The second factor is satisfied because FDEP exercises control over Arcadis.  The 64 page Contract establishes the extensive control that FDEP had over Arcadis in the completion of its duties under the Contract.  An illustrative, but not exhaustive, list of the control that FDEP exercised over Arcadis includes:

1. Any and all work was assigned to Arcadis in the sole discretion of FDEP, (Contract, ¶2);

2. FDEP directed the requirements for "all sampling and analysis" performed under the Contract, (Contract, ¶46);

3. FDEP determined if Arcadis performed its services in a "proper and satisfactory manner," (Contract, ¶3);

4. All payments to Arcadis are contingent upon annual appropriations by the Florida Legislature, (Contract, ¶8);

5. FDEP could "pre-audit" and "post-audit" Arcadis' invoices, (Contract, ¶9A);

6. Arcadis was required to submit status reports on work "in writing and/or electronically, not less frequently than ever other week, (Contract, ¶16);

7. Personal property used for the Contract and purchased by Arcadis, over a certain cost amount, "remains property of [FDEP]", (Contract, ¶17);

8. "All plans, specs, reports, and other data collected, prepared, or obtained under the Contract "shall become the property of the Department upon the completion or termination of the contract," and the Department has the right to inspect the work and products at any time, (Contract, ¶18)

9. Arcadis' records created under the scope of the Contract were considered public records, and failure to release records could result in a unilateral FDEP cancellation of the Contract, (Contract, ¶25);

10. FDEP "may at any time . . . make any change in the work within the general scope of this Contract (e.g., specifications, time, method or manner of performance, requirements, etc.)."  (Contract, ¶26);

11. FDEP directed the manner in which Arcadis was to maintain "books, records and documents directly pertinent to performance" under the Contract and the duration those documents were to be retained, (Contract, ¶34);

12. FDEP prohibited assignment of the Contract without its approval, (Contract, ¶39);

13. FDEP specified which subcontractors Arcadis was permitted to use under the Contract, (Contract, ¶40);

14. Attachment C contains nearly 5 single spaced pages setting forth the manner in which work under the Contract is to be provided, (Attachment C, pp. 1-5);

15. Attachment J contains nearly 10 single spaced pages setting forth Quality Assurance Requirements for the Contract, (Attachment J, pp. 1-10);

16. Attachment K contains nearly 12 single spaced pages setting forth "Additional Terms and Conditions" for the Contract, (Attachment J, pp. 1-12).

These examples demonstrate FDEP's extensive control over Arcadis and satisfy the *Manders* test's control requirement.[3]

The third factor is satisfied because Arcadis receives payment for the services it performs under the Contract from the State.  Paragraph 25 of the Contract provides that any funds for work were explicitly contingent upon appropriations by the Florida Legislature.

Finally, the fourth factor, responsibility for the judgment, is also satisfied.  Plaintiff seeks damages from both FDEP and Arcadis, based on their respective actions taken under Program and the Contract, which actions are intertwined.  The claims against Arcadis are based on its work under the Contract.  FDEP could be found to be either legally or financially liable for a judgment entered based on Plaintiff's allegations relating to Arcadis' actions under the Contract.  Either of these forms of liability is sufficient to meet the fourth factor.  *Shands*, 208 F.3d at 1312-13 (finding

---

[3] Although the FDEP Contract contains language that Arcadis is performing as an independent contractor and not as an agent for FDEP, that provision is not dispositive of the agency issue. Rather "[T]he actual relationship, however, not the label, determines whether there is an agency [relationship]."  *Lovelace*, 320 So. 3d at 186, *citing G4S Secure Sols. (USA) Inc. v. Morrow*, 210 So. 3d 92 (Fla. 2d DCA 2016) and *Robinson v. Linzer*, 758 So. 2d 1163 (Fla. 4th DCA 2000).

that a judgment on a claim that would implicate state funds, even when the state agency itself was not a party, was sufficient for Eleventh Amendment immunity to the non-state actor); *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1046 (11th Cir. 2007) (where the state agency is legally liable for a judgment, but indemnified by the non-state entity, the Eleventh Amendment would still apply to the non-state entity).[4]

The Eleventh Amendment immunity applies to and protects Arcadis because all of Arcadis' actions were undertaken pursuant to the Contract, in furtherance of FDEP's statutory obligations and, thus, Arcadis was acting as an agent of the State.

The Florida Fourth District Court of Appeals decision in *Lovelace* is highly instructive for sovereign immunity analysis. In that case, the court examined a contract by which a private company provided security services to Broward County and found the security service company was covered by Broward County's sovereign immunity. The court concluded that Broward's County's "degree of control over" the security company "created an agency relationship" such that the security company fell within Florida's sovereign immunity statute. *Lovelace,* 320 So. 3d at 189. The *Lovelace* court cited "articles" in the contract on indemnification, insurance, audit rights and record retention. *Id.* at 180. The Contract contains similar provisions listed above. Moreover, the *Lovelace* court quoted several pages of the underlying contract detailing the scope of services as well as "the specifications and requirements" for security guard services. *Id.* at 181-85. Contract Attachments C, J and K, detailed above, contain similar, if not more detailed, requirements showing FDEP control over Arcadis' work. Thus, as in *Lovelace,* Arcadis is covered by FDEP's sovereign immunity.

---

[4] The Contract's indemnification provision is irrelevant for Eleventh Amendment immunity analysis because FDEP has potential legal liability based on Arcadis' alleged actions. *Rosario,* 506 F.3d at 1046.

Accordingly, under Fla. Stat. §768.28, *Manders*, and *Lovelace*, and including the fact that Florida has never waived its Eleventh Amendment sovereign immunity, Arcadis is entitled to the same Eleventh Amendment immunity protections that FDEP has based on the fact that Arcadis is an agent/instrumentality of FDEP for all purposes in this action.

Since the Court does not possess subject matter jurisdiction over the claims asserted against Arcadis, the Court need not, and should not, proceed further.  Accordingly, Arcadis' remaining arguments set forth below are made in the alternative.

### C.   Plaintiff Lacks Standing To Pursue His Claims Against Arcadis Because His Company Could Not Properly Assign the Claims Sued Upon To Plaintiff

Fed. R. Civ. P. 12(b)(1) also mandates a complaint be dismissed for lack of subject-matter jurisdiction if the plaintiff lacks standing to assert the claims.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).  Here, Plaintiff does not possess standing to assert his claims because the Amended Complaint alleges they were assigned to him by his company.  Comp. ¶ 2.

It is black letter law that "purely personal tort claims cannot be assigned under Florida law." *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So.2d 557, 559 (Fla. 1997), *receded from on other grounds by Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So.2d 755, 757 (Fla. 2005). While causes of "action generally are assignable, one which consists of a personal tort (such as for personal injuries, slander, assault, etc.) is not." *McNulty v. Nationwide Mut. Ins. Co.*, 221 So.2d 208, 210 (Fla. 3d DCA 1969).  *See also Notarian v. Plantation AMC Jeep, Inc.*, 567 So.2d 1034, 1035 (Fla. 4th DCA 1990) (an employee's claim against his former employer for intentional infliction of emotional distress was a personal injury claim that was not assignable).

Similarly, "[u]nder the [federal] common law and the law of most states, personal injury claims are not assignable absent a statute to the contrary." *Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co.*, 60 F. Supp. 2d 1285, 1287-88 (M.D. Fla. 1999) (applying the rule against assigning

personal injury claims to admiralty actions).  *See also Evans v. Boyd Rest. Group, LLC*, 240 Fed. Appx. 393, 398 (11th Cir. 2007) (Title VII discrimination claim was not assignable under either Georgia or federal law, because the relief that can be awarded including "emotional pain and suffering, loss of enjoyment of life, and punitive damages . . . makes it more similar to a personal injury tort action than an action to enforce contractual or property rights.").

Here, Plaintiff asserts a host of purely personal claims that, by his own admission, were assigned to him by his company.  Comp. ¶ 2.  Plaintiff's alleged damages include, but are not limited to: being subject to civil and criminal investigations (*Id.* at ¶ 50); being "forced to forego a series of gainful; investments opportunities [sic], business opportunities, and even employment opportunities" (*Id.*); "damages to his mental, emotional, and economic health . . . and an inability to provide for . . . his family" (*Id.*); the threatening, hindrance, and infringement of his "rights, liberties, protections, and freedom" (*Id.* at ¶ 58); "damages to a pre-existing injury, loss wages, loss profits, [and] loss of use" (*Id.* at ¶ 76); "irreparable damage and harm to his finances, mental health, emotional stability, along with personal, and interpersonal relationships" (*Id.* at ¶ 112); "loss of the enjoyment of life, damage to his personal reputation, damage to his business relationships, and a diminished sense of self value and worth" (*Id.* at ¶ 125).

As these claims are "of a most personal character," they are not able to be assigned, *Notarian*, 567 So.2d at 1035, and the Court should dismiss Plaintiff's Amended Complaint.

### D.    Count I Must Also Be Dismissed Because Plaintiff Lacks Standing

In Count I, Plaintiff attempts to assert a declaratory claim pursuant to 28 U.S.C. § 2201 seeking, in effect, a determination of the party/parties who are allegedly responsible for discharge of pollutants under Fla. Stat. § 376.308(2).  This request fails for at least two reasons.

First, a plaintiff bears the burden of proving standing, which requires a showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d610 (2000)).  Alleged injuries from prior conduct cannot support a declaratory relief claim unless there is a showing of continued conduct or that such conduct will be repeated in the future.  *Emory v. Peeler,* 756 F.2d 1547, 1552 (11th Cir. 1985).  In the absence of actual injury, a plaintiff only possesses standing if a *threatened* injury is alleged to be "certainly impending" or there is a "substantial risk" that harm will occur; mere allegations of possible future injury are not sufficient.  *Stapleton on behalf of C.P. v. Tampa Bay Surgery Ctr., Inc.*, No. 8:17-CV-1540-T-30AEP, 2017 WL 3732102, at *3 (M.D. Fla. Aug. 30, 2017) (finding no standing in data breach class action).

There are no allegations in the Amended Complaint that establish standing.  A declaration that past conduct violated a plaintiff's rights would be "nothing more than a gratuitous comment without any force or effect."  *Walden v. Centers for Disease Control and Prevention,* 669 F.3d 1277, 1284 (11th Cir. 2012) (internal quotations omitted).  Here there is no threat of continued harm as Plaintiff alleges he is no longer in the dry cleaning business (Comp. ¶41).  Thus it is impossible for him to properly assert a declaratory judgment claim.

Moreover, Plaintiff has not cited any underlying statute providing a right to a judicial declaration.  The Amended Complaint relies upon Fla. Stat. § 376.308(2).  However, that statute only applies to actions brought by FDEP.  Section 376.308 (1) states:  "In any suit instituted by the department . . .."  Without question, "the department" is FDEP, not a private litigant.  Thus,

Plaintiff's declaratory judgment claim fails for this reason as well.

### III.    PLAINTIFF'S CLAIMS ARE ALL BARRED BY SOVEREIGN IMMUNITY

#### A.    All Claims Are Barred By Sovereign Immunity

As demonstrated above, Arcadis is an agent of the State of Florida.  In Florida, "sovereign immunity is the rule, rather than the exception."  *Pan-Am Tobacco Corp. v. Dep't of Corr.,* 471 So.2d 4, 5 (Fla. 1984).  Arcadis incorporates its discussion of *Lovelace* at p. 7 *supra.*  The Contract plainly demonstrates FDEP control over Arcadis.  Thus, Arcadis is an agent of the State for purposes of the claims asserted in this suit.  This Court should follow the decision of the court in *Lovelace* and find Plaintiff's claims barred by sovereign immunity.

#### B.    Plaintiff's Statutory Counts Are Separately Barred

Plaintiff's statutory claims are separately barred by sovereign immunity because they are not "torts."  Fla. Stat. § 768.28(5)(a) only waives sovereign immunity for claims against the State for "torts" and not statutory claims.  Yet, Counts I (declaratory judgment); III (negligence per se based on Fla. Stat. Ch. 556); Count IV (Fla. Stat. Ch. 376); Count XI (Fla. Stat. Ch. 895) and Count XII (18 U.S.C.  Ch. 96) are all statutory claims. Thus, they are not "torts" within the meaning of Florida's wavier of sovereign immunity.

As demonstrated above, Arcadis is an agent of the State.  In Florida, "sovereign immunity is the rule, rather than the exception."  *Pan-Am Tobacco Corp. v. Dep't of Corr.,* 471 So.2d 4, 5 (Fla. 1984).  Only the Florida legislature has the authority to waive the State's immunity.  *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.,* 908 So.2d 459, 471 (Fla. 2005).  As a result, "statutes purporting to waive sovereign immunity must be clear and unequivocal."  *Spangler v. Fla. State Tpk. Auth.,* 106 So.2d 421, 454 (Fla. 1958).  Waiver cannot be found by inference or implication and statutes waiving sovereign immunity must be strictly construed.  *Fla. Dep't of*

*Transp. v. Schwefringhaus,* 188 So.3d 840, 846 (Fla. 2016).  None of the cited statutes contain a waiver of sovereign immunity.  Thus, these claims are all barred by sovereign immunity.

Consistent with its duty of candor, Arcadis advises the Court that one decision holds that Fla. Chap. 376 contains an *implied* waiver of sovereign immunity.  *Irizarry v. Orlando Utilities Comm'n,* 6:19-cv-268-Orl-37EJK, 2020 WL 5534424 (M.D. Fla. June 23, 2020).  However, that case found an *implied* waiver which is contrary to the rule prohibiting implied waivers.  *Scwefringhaus,* 188 So.3d at 846.  Arcadis suggests the better-reasoned authority recognizes there is no waiver under that Chapter 376.  *See Becker v. City of Ft. Ft. Myers,* 2:18-cv-195-FtM-38UAM, 2019 WL 2929326 at *3 (M.D. Fla. 2019) and *Miller v. City of Ft. Myers,* 2:18-cv-195-FtM-38UAM, decision dated April 1, 2019, attached hereto as Exhibit B, at pp. 20-23.

### IV.    THE AMENDED COMPLAINT IS AN IMPERMISSIBLE "SHOTGUN PLEADING"

Fed. R. Civ. P. 8(a)(2), requires a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Complaints that violate Rule 8 are referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The *Weiland* court "identified four rough types or categories of shotgun pleadings" that are not permitted.  *Id.* at 1321.  The Amended Complaint falls into three of these prohibited categories.  First, the Amended Complaint violates the most common pleading prohibition recognized by *Weiland:* "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Id.*  Second, the Amended Complaint "is guilty of . . . being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Id.* at 1322.  Third, the Amended Complaint is guilty of "asserting

multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions . . .." *Id.*

While *pro se* plaintiffs are entitled to some latitude, the prohibition against shotgun pleading nonetheless applies to them. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. Appx 274, 277 (11th Cir. 2008) (applying shotgun pleading standard to a *pro se* litigant where the complaint was "confusing, incoherent, and clogged with seemingly irrelevant factual allegations").

First, all 50 introductory allegations, spanning nearly 24 pages, are incorporated into each Count with no attempt to limit them to the Counts to which they could reasonably apply.  Also, at least Counts XI and XII (state and federal RICO) impermissibly incorporate, essentially, the entirety of the Amended Complaint.  In Count XI, ¶ 185 incorporates Counts III, IV, VI, VIII and X.  Count XII, ¶ 189 incorporates all of the Counts in XI, plus Count XI itself.  Thus, these two Counts are the quintessential shotgun pleading condemned by the Eleventh Circuit.

Second, the Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322.  The most egregious allegations improperly asserted against Arcadis involve a supposed unannounced inspection by FDEP, not Arcadis.  These allegations, contained in paragraphs ¶¶ 34 and 35, are asserted in each of the claims asserted against Arcadis.  While, facially, these are only two numbered paragraphs, they contain, a total of 12 subparts and span three pages the Amended Complaint.  There is no reason they are contained in the allegations against Arcadis.

Third, Plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323.  Count I includes at least 4 defendants in addition to Arcadis.  Count III contains 1 additional defendant.  Count IV and XII contains 2 additional defendants.  Count XI contains at least 7

additional defendants. Yet, the Amended Complaint fails to specify which defendants are allegedly responsible for which acts or omissions.

## V.     COUNT III FAILS TO STATE A CLAIM

Count III attempts to assert a claim for "negligence per se" for alleged violations of Fla. Stat. Chap. 556. This claim fails because this chapter relates to the underground facilities such as pipelines, pipes and conduits located on a "member operator's" right of way or easement for the transport of items such as oil, petroleum products and electricity. Notably, this Chapter does not relate to the situation alleged to be involved in this case: a septic tank.

Chapter 556 created uniform statewide procedures for determining the existence of underground utilities prior to excavation. *See Martin v. Florida Power and Light, Co.,* 909 So.2d 555, 556 (Fla. 4th DCA 2005). Thus, the statute created a centralized database called "One Call" for "member operators" who transport materials by means of an "underground facility." Fla. Stat. §§ 556.103 - 104. The One Call system allows parties seeking to excavate in a "member operator's" right of way, easement or permitted use to notify such "member operator" of planned excavation. Once so notified, the "member operator" is required to mark its underground facilities to avoid damage during excavation. *See generally* Fla. Stat. §§ 556.103 - .105.

Thus, Chapter 556 plainly does not apply to the facts in this case. Notably, a "member operator" is defined as a person "who furnishes or transports materials or services by means of an underground facility." Fla. Stat. § 556.102(10). An "underground facility" is "public or private personal property which is buried . . . on any member operator's right-of-way, easement or permitted use which is being used . . . in connection with the storage or conveyance of water; sewage; electronic, telephonic or telegraphic communication; electric energy; oil; petroleum; natural gas; optical signals; or other substances . . .." Fla. Stat. § 556.102(16).

14

While the definition of "underground facility" is admittedly lengthy, in essence, it refers to underground pipes, conduits and other conveyance structures that allow for the "furnishing or transportation of materials or services." Fla. Stat. § 556.102(10). For this reason, the cases construing this chapter invariably have as parties pipeline operators, telecommunications companies, and the like. *See e.g. Martin v. Florida Power and Light, Co., supra; Peoples Gas System v. Posen Constr., Inc.,* 322 So.3d 604 (Fla. 2021), and *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms., Inc.,* 3:07-cv-598-J-32MCR, 2008 WL 360803 (M.D. Fla. Feb. 8, 2008). Indeed, Arcadis' research has not revealed any case involving this Chapter and a septic tank. And for good reason. Unlike pipelines and conduits, a septic tank is not involved in the transportation of materials or services, but rather is "a tank in which the solid matter of continuously flowing sewage is disintegrated by bacteria."[5] Septic tanks are simply not the types of structures intended to be covered by Chapter 558. Nor does Plaintiff allege that the septic tank is being used . . . in connection with the storage or conveyance of water; sewage; electronic, telephonic or telegraphic communication; electric energy; oil; petroleum; natural gas; optical signals; or other substances . . .." Fla. Stat. § 556.102(16).

Finally, though Plaintiff alleges he is a "member operator" (Comp. ¶ 70), that cannot be true as he does not allege he is involved in the necessary transportation of materials or services. Thus, the Court can properly disregard this allegation because, while a court must accept as true all factual allegations, that rule does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "labels and conclusions or a formulaic recitation of the elements of a cause of action" is not sufficient to state a claim for relief. *Id.*

## VI.    COUNT IV FAILS TO STATE A CLAIM

---

[5] Merriam-Webster on line dictionary: www.merriamwebster.com/dictionary/septic%20tank

Count IV attempts to state a claim for contamination under Fla. Stat. § 376.313.  It fails. Section 376.313 provides that a claim may be brought for "damages resulting from a discharge or other condition of pollution covered by ss 376.30-376.317."

Count IV is comprised of paragraphs 1-50 and 77-88.  While para. 85 alleges the three defendants sued in that count were guilty of "negligence with the handling of the site" such that "a previous discharge that was trapped in the vadose zone, was transported to the groundwater," it contains no allegations, much less allegations of fact, identifying the allegedly negligent acts or omissions.  Thus, it fails to state a claim.

## VII.    COUNT VII FAILS TO STATE A CLAIM

Count VII fails to state a claim for "fraudulent concealment."

Though the allegations of Count VII are somewhat confusing, it appears Plaintiff relies on three statutes to underpin his concealment claim.  Plaintiff's reliance on those statutes is misplaced. Fla. Stat. § 376.302(1)(c) (misidentified in para. 115 of the Amended Complaint as 376.302(12)), only provides for a remedy by "the state" (§ 376.302(2)) or criminal penalties.  18 U.S.C.  § 1519 is a federal criminal statute.  Fla. Stat. § 556.105 is inapplicable as explained in Section V above.

A claim for fraudulent concealment under Florida common law must allege: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment.  *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017).

"A duty to disclose arises if 'one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties.'"

*Dunkel v. Hamilton*, 3:15-CV-949-J-34PDB, 2016 WL 4844662, at *11 (M.D. Fla. Aug. 8, 2016), *report and recommendation adopted*, 3:15-CV-949-J-34PDB, 2016 WL 4765740 (M.D. Fla. Sept. 13, 2016) (quoting *Friedman v. Am. Guardian Warranty Services, Inc.*, 837 So.2d 1165, 1166 (Fla. 4th DCA 2003)) (failure to state a claim for fraudulent concealment where plaintiff "has not alleged facts showing the plausible existence of a duty to disclose owed to her by [defendant]").

Fraudulent concealment claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Koski*, 347 F. Supp. 3d at 1196. "To meet this standard, a complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." *Id.* at 1197.

In *Koski*, the plaintiff alleged that the defendants made material misrepresentations regarding and concealed the dangers of defective heaters and HVAC equipment. The court found the plaintiffs failed to plead their fraudulent concealment claim with the requisite particularity where, for example, "[t]he Plaintiffs [made] the conclusory allegation that the 'HVAC and Heater Manufacturer Defendants undertook active and ongoing steps to conceal the defect.' . . . However, the Plaintiffs [did] not identify those 'active and ongoing steps.'" *Id.* Similarly, here, Plaintiff has not come close to meeting the heightened pleading requirements of Rule 9(b). Plaintiff merely alleges that Arcadis "had a civil, professional as well as contractual duty to disclose [the alleged contamination] to the FDEP and by extension Mr. Dulcio." Comp. ¶ 124. However, Plaintiff "has not alleged facts showing the plausible existence of a duty to disclose owed to" him by Arcadis. *Dunkel*, 2016 WL 4844662, at *11. Further, Plaintiff has neither alleged that Arcadis knew its concealment would induce Plaintiff to take some action, nor how Plaintiff relied on the alleged concealment to his detriment. Accordingly, Count VII should be dismissed.

## VIII.   COUNTS XI AND XII FAIL TO STATE CLAIMS

Plaintiff's Florida and federal RICO counts[6] fail to state claims for several reasons.

First, government entities cannot be liable under RICO.  As Arcadis is an agent of the State, it cannot be held liable under RICO.  Florida and its agencies cannot be liable under the federal RICO statute.  *Marlett v. Marlett,* 3:11-cv-959, 2012 WL 13136736 at *10 (M.D. Fla. Feb. 7, 2012) (federal RICO claim barred by sovereign immunity); *Gueli v. U.S.,* 8:06-cv-1080-T27-MSS, 2006 WL 3219272 at *4 (M.D. Fla. Nov. 6, 2006) (same because Florida has not waived immunity to suit for federal RICO claims).  *See also Biondolillo v. City of Sunrise*, 736 F. Supp. 258, 261 (S.D. Fla. 1990) (dismissing RICO claim against a city because a municipality "is incapable of the criminal intent necessary to support the alleged predicate offenses") and *Pine Ridge Recycling, Inc. v. Butts Cnty., Ga.,* 855 F.Supp. 1264. 1273-74 (M.D. Ga. 1994) (same).

Plaintiff's Florida RICO claim is similarly barred.  *Springer v. Fla. Dep't. of Nat. Resources,* 485 So.2d 15 (Fla. 3d DCA 1986) (Florida RICO claim "cannot lie against the state or its subdivisions.").  The conclusion that governments cannot be liable for Florida RICO is further supported by the cited federal authorities because Florida's RICO statute has consistently be construed in light of the federal RICO statute.  *See* footnote 6.

Second, while as demonstrated below, Plaintiff fails to plead any of the required elements of a Florida or federal RICO claim, more fundamentally, Plaintiff does not allege Arcadis engaged in any activity that RICO was intended to target.  "Congress enacted RICO in an attempt to eradicate organized, long-term criminal activity . . . [and] chose to supplement criminal enforcement of its provisions with a civil cause of action for persons whose business or property

---

[6] Arcadis addresses Plaintiff's Florida (Count XI) and federal (Count XII) RICO claims together. "Florida's RICO statutes have consistently been interpreted using federal RICO claims cases." *All Care Nursing Serv., Inc. v. High Tech Staffing Services, Inc.*, 135 F.3d 740, 745 (11th Cir. 1998).

has been injured by such criminal activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). "To encourage private enforcement, Congress provided civil RICO plaintiffs with the opportunity to recover treble damages, costs, and attorney's fees if they can successfully establish the elements of a RICO violation." *Id.* Because "RICO actions should not be used in lieu of garden variety state law claims . . . courts have an obligation to scrutinize civil RICO claims early in the litigation" and "flush out frivolous RICO allegations at an early stage of the litigation." *DeBoskey v. SunTrust Mortgage, Inc.*, 8:14-CV-1778-MSS-TGW, 2017 WL 4083557, at *7 (M.D. Fla. Sept. 14, 2017) (internal quotations omitted). A litigant "is not permitted to 'fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions.'" *Frank v. Ocean 4660, LLC*, 11-62004-CIV, 2012 WL 12911035, at *4 (S.D. Fla. Jan. 30, 2012).

*Frank* involved a business dispute "concerning the operation of a hotel restaurant." *Id.* This Court summarily rejected the plaintiff's attempt to "label" its allegations of pre-contractual misrepresentations, breaches of the lease and other business related conduct as predicate RICO offenses. This Court found it "exceedingly clear that Plaintiffs [were] abusing the federal RICO statute by attempting to employ it in what [was] obviously a business dispute alleging, at best, state law claims." *Id.*

Similarly, here, Plaintiff attempts to assert RICO claims against Arcadis for alleged environmental contamination. This is not simply not the type of activity RICO targets.

Third, the Amended Complaint fails to allege the elements necessary for either a Florida or federal RICO claim. In order to state a Florida RICO claim, "a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of criminal activity." *Berber v. Wells Fargo Bank, N.A.*, 16-24918-CIV, 2018 WL 10436236, at *3 (S.D. Fla. May 24, 2018). "The RICO statutes have been construed to also require that a plaintiff plead (1) distinctness, as to the RICO 'person'

and the 'enterprise,' *Id.* Similarly, in order to state a federal civil RICO claim a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury to business or property (6) that was by reason of the substantive RICO violation." *MasTec Renewables Puerto Rico LLC v. Mammoth Energy Services, Inc.*, 494 F. Supp. 3d 1233, 1239 (S.D. Fla. 2020). The Amended Complaint utterly fails to contain these necessary allegations.

There are no factual allegations that Arcadis engaged in conduct sufficient to meet the "criminal activity" and "racketeering activity" definitions of Fla. Stat. § 772.104(1) or 18 U.S.C. § 1961(1). Nor are there allegations that Arcadis engaged in the required "two incidents" or "two acts" required by Fla. Stat. § 772.102(1) and 18 U.S.C. § 1961(5) to meet the "pattern of criminal activity" or "pattern of racketeering activity" elements of the Florida and federal RICO statutes. Nor are there allegations that, the unpled predicate acts, were similar or interrelated and there was a "continuity" of particular criminal activity. *State v. Lucas,* 600 So.2d 1093, 1094 (Fla. 1992) (Florida RICO) and *Daedalus Capital LLC v. Vinecombe,* 625 Fed.Appx 973, 976 (11th Cir. 2015) (federal and Florida RICO) (to prove a RICO violation, the predicate acts "demonstrate criminal conduct of a *continuing* nature."). Nor are there allegations establishing the "enterprise" requirement in Fla. Stat. § 772.103(3) and 18 U.S.C. § 1961(4); both of which require a plaintiff to plead "distinctness, as to the RICO 'person' and the 'enterprise.'" *Berber,* 2018 WL 10436236, at *3. Finally, there are no allegations of "proximate causation of the claimed injury by the predicate criminal conduct." *Berber,* 2018 WL 10436236, at *3. Accordingly, Counts XI and XII should be dismissed.

## IX.    CONCLUSION

The Amended Complaint should be dismissed in all respects as to Arcadis.