# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:22-CV-81908-ROSENBERG/REINHART

MARC M. DULCIO,

     Plaintiff,

v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

     Defendants.

_____/

## <u>OMNIBUS ORDER GRANTING IN PART MOTIONS TO DISMISS</u>

This cause is before the Court on (1) the Motion to Dismiss the Amended Complaint of Plaintiff, Mark M. Dulcio, filed by Defendants Florida Department of Environmental Protection ("FDEP"), Shawn Hamilton ("Hamilton"), Lateshee M. Daniels ("Daniels"), Florida Department of Environmental Protection Waste Site Clean Up Section ("FDEP-Waste"), Theresa Pepe ("Pepe"), Breck Dalton ("Dalton"), Aaron Cohen ("Cohen"), Florida Department of Environmental Protection Office of General Counsel ("FDEP-Counsel"), Gary Ballard ("Ballard"), Staci Kichler ("Kichler"), Florida Department of Environmental Protection of the Southeast District ("FDEP-SE"), Jason Andreotta ("Andreotta"), Sirena Davila ("Davila"), Norva Blandin ("Blandin"), Alannah Irwin ("Irwin"), and Romina Lancellotti ("Lancellotti") (collectively, "FDEP Defendants"), [DE 26]; (2) the Motion to Dismiss the Amended Complaint filed by Defendant Justin Stark ("Stark"), [DE 54]; (3) the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant Arcadis, Inc. ("Arcadis"), [DE 57]; (4) the Motion to Dismiss filed by Defendant Earth Tech Drilling, Inc. ("Earth Tech"), [DE 62]; and the Motion to Strike Request for Punitive Damages filed by Arcadis. DE 58. Plaintiff filed Responses, [DE 42], [DE 68], [DE

70], and the FDEP Defendants and Arcadis filed Replies.  DE 49, 71, 72.

For the reasons set forth below, the Motions to Dismiss are granted insofar as all claims in the Amended Complaint are dismissed. However, because the FDEP Defendants and Stark's Motions, [DE 26] and [DE 54] seek dismissal of all claims with prejudice, and Arcadis and Earth Tech's Motions, [DE 57] and [DE 62], do not take a position on whether claims should be dismissed with or without prejudice and the Court dismisses some claims with prejudice and some claims without prejudice, the Motions are denied insofar as they seek dismissal of all claims with prejudice. In addition, the Motion to Strike is granted.

## I.      FACTUAL ALLEGATIONS & BACKGROUND

Plaintiff, who is proceeding *pro se*, filed his original Complaint, [DE 1], on December 9, 2022, then filed his Amended Complaint on January 3, 2023. DE 7.  Plaintiff asserts claims against the FDEP Defendants as well as the United States Environmental Protection Agency ("EPA"), Arcadis, U.S., Inc. ("Arcadis"), GPI Properties, Inc. d/b/a Groundwater Protection ("GPI"), and Earth Tech Drilling, Inc. ("Earth Tech").

The allegations below are taken from the Complaint and accepted as true for purposes of the Motions.  Plaintiff purchased a dry-cleaning business, Life Style Cleaners ("LSC"), and related equipment on June 6, 2019, and entered into a lease agreement with the property owner to lease the site for five years.  DE 7 at ¶ 21.  The property was to serve as the "plant" where the dry cleaning would be performed, and is referenced in the Amended Complaint as the "LSC-Plant". *Id.* ¶¶ 21, 37. In April 2020, November 2020, and May 2021, Plaintiff purchased additional properties to serve as drop-off locations for LSC. *Id.* ¶¶ 24, 27, 37.

Prior to Plaintiff's purchase of LSC, from approximately December 2017 to May 2019, site

assessments and surveys were performed, reports were submitted to the FDEP, and modified air and gas wells were installed on the property. *Id.* ¶¶ 10-20.  Following Plaintiff's purchase of LSC, on or around July 25, 2019, FDEP employees performed a Compliance Evaluation Inspection of LSC. *Id.* ¶ 22. Plaintiff completed necessary repairs and corrected any violations by November 1, 2019. *Id.* ¶ 23. On September 9, 2020, and September 10, 2020, Arcadis began drilling at LSC's property for additional wells and collected groundwater samples. *Id.* ¶¶ 25-26. From November 11, 2020, through January 8, 2021, Arcadis submitted site assessment reports to FDEP and collected additional groundwater samples. *Id.* ¶¶ 28-30.

On March 25, 2021, Dalton submitted a memorandum to Pepe, noting "significant contamination" at the site that warranted remediation. *Id.* ¶ 33. On April 13, 2021, an unknown individual entered the LSC site and demanded to perform an inspection. *Id.* ¶ 34. Plaintiff was not on the premises at the time and was unaware of the inspection, and requested that the inspection be postponed or rescheduled until Plaintiff could speak with the building owner. *Id.* ¶ 34(ii)-(iii). The unknown individual "became very irate," threatened Plaintiff with fines and criminal charges, and insulted Plaintiff. *Id.* ¶ 34(v)-(vi). Plaintiff later determined that the individual was an FDEP employee, agreed that he would allow access, and apologized to FDEP, Irwin, and Lancellotti via email. *Id.* ¶ 34(viii)-(x). Irwin "responded with additional threats of violations, fines, fees, and civil liabilities." *Id.* ¶ 34(xi).

On April 16, 2021, Lancellotti performed an inspection at the LSC and apparently submitted a report that resulted in LSC being placed in "non-compliance" status and the property owner threatening to evict Plaintiff if he failed to correct the violations. *Id.* ¶ 35.  Prior to July 1, 2021, Plaintiff "completed all corrections requested by FDEP-SED" to regain compliance status

with FDEP. *Id.* ¶ 38.  Plaintiff provided pictures to indicate that he complied with FDEP and FDEP-SE's demands, and Irwin notified Plaintiff that FDEP had 300 days to review Plaintiff's submission. *Id.* As a result, the property owner informed Plaintiff that because LSC was not in compliance with applicable laws as required under the lease agreement, the owner must evict Plaintiff. *Id.* Then, in July 2021, Plaintiff attempted to sell LSC but was unable to do so because of his non-compliance status. *Id.* ¶ 39.

On September 1, 2021, Plaintiff, the property owner, Lancellotti, and Stark participated in a conference call to address the outstanding violations. *Id.* ¶ 40. During the call, Plaintiff and the property owner were advised that FDEP, FDEP-SE, and FDEP-Waste believed LSC and Plaintiff had discharged perchloroethylene. *Id.* On November 1, 2021, Plaintiff was evicted from the LSC site. *Id.* ¶ 41. As a result of the eviction, Plaintiff could not maintain LSC's drop-off locations, was forced to cease all operations, and lost various contracts. *Id.* ¶ 41.

Between November 1, 2021, and July 5, 2022, Plaintiff began working to determine the cause of the spike in perchloroethylene at the LSC site, and reviewed the reports Arcadis submitted to FDEP. *Id.* ¶ 42.  Plaintiff called an Arcadis employee in an attempt to clarify the discrepancies Plaintiff found within one of the reports, but the employee "appeared to become a bit agitated" and made the following comment: "Those things don't matter, the real problem is they have a black business owner that didn't give them access. He's basically digging his own grave." *Id.* ¶ 42(i).

On December 1, 2021, FDEP issued Plaintiff an Official Notice of Potential New Discharge, and on February 10, 2022, FDEP issued Plaintiff an Official Notice of Violation. *Id.* ¶¶ 43-44. On May 4, 2022, Plaintiff was made aware of a criminal investigation FDEP had opened against him stemming from Arcadis' collection of samples in September 2020 and Arcadis'

consultation with FDEP. *Id.* ¶¶ 45-46. On May 18, 2022, FDEP acquired a search warrant with

Plaintiff's name on it and searched LSC with ten police officers. *Id.* ¶ 47.  On July 5, 2022, Plaintiff

notified the EPA, FDEP, FDEP-SE, and FDEP-Waste that the LSC site was a "Dense Non-

Aqueous Phase Liquid" ("DNAPL") site and that because the LSC site was "misdiagnosed," it was

then "mishandled" by Arcadis, Earth Tech, and GPI, which led to the chemical spike. *Id.* ¶ 48.

Plaintiff contracted with an independent firm to perform sampling of the site, and the contractor

determined that a new discharge by Plaintiff was "not possible given the evidence." *Id.* ¶ 49.

The Amended Complaint asserts the following 13 claims:

- Count I: Declaratory Relief against FDEP, FDEP-SE, FDEP-Waste, DSCP,[1] and Arcadis;

- Count II: Declaratory Relief against FDEP, FDEP-SE, FDEP-Counsel, Irwin, and Lancellotti;

- Count III: Negligence Per Se against Arcadis and GPI;

- Count IV: Violation of Florida Statutes § 376.30-376.317 against Arcadis, GPI, and Earth Tech;

- Count V: Deprivation of Rights Under 42 U.S.C. §§ 1983 & 1985 against Lancellotti and Stark;

- Count VI: Defamation (Libel) Per Se against Andreotta, Irwin, and Lancellotti;

- Count VII: Fraudulent Concealment against Arcadis;

- Count VIII: Conspiracy to Interfere with Civil Rights against Davila, Irwin, Lancellotti, Stark, and Kichler;

- Count IX:[2] Action for Neglect to Prevent, 42 U.S.C. § 1986 against Blandin, Hamilton, Kichler, Ballard, Dalton, Cohen, Pepe, and Daniels;

- Count X: Deprivation of Rights Under 42 U.S.C. § 1983 against Andreotta, Davila,

---

[1] DSCP is not a named Defendant in the Amended Complaint, but is merely referenced as the "Drycleaner Solvent Cleanup Program" affiliated with FDEP-Waste. DE 7 ¶¶ 5, 40. Accordingly, the Court construes DSCP as FDEP-Waste.

[2] This count is misnumbered at Count VIV in the Amended Complaint.

Irwin, Lancellotti, and Kichler;

- Count XI: Florida RICO against Arcadis, GPI, Earth Tech, Andreotta, Davila, Irwin, Lancellotti, and Kichler;

- Count XII: Violations of 18 U.S.C. § 1962, 18 U.S.C. § 1964 against Arcadis, GPI, and Earth Tech;

- Count XIII: Action for Corrective Action and Administrative Penalty Assessment under 33 U.S.C. § 1321(g) against EPA and FDEP.

## II.    STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff; however, a plaintiff is still obligated to provide grounds of his or her entitlement to relief which requires more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-563 (2007). Unwarranted deductions of fact in a complaint cannot be admitted as true for the purposes of testing the sufficiency of the allegations. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  The facts as pled must state a claim for relief that is plausible on the face of the pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009).

## III.    ANALYSIS

The FDEP Defendants argue that the Amended Complaint must be dismissed for a number of reasons, including that (1) it is a shotgun pleading; (2) FDEP is entitled to immunity under the Eleventh Amendment to the U.S. Constitution; (3) the individual FDEP Defendants are entitled to qualified immunity; (4) Counts V and X fail to allege facts to state a claim under 42 U.S.C. § 1983; (5) Plaintiff lacks standing to pursue his claims for declaratory and injunctive relief; (6) Count VI is barred by sovereign immunity and otherwise fails to state a claim for relief; (7) the Amended

Complaint fails to state a claim as to Counts VIII and IX; and (9) Plaintiff's claim for punitive damages must be stricken.

Stark, a former FDEP employee, argues that the claims against him should be dismissed because (1) the Amended Complaint is a shotgun pleading; (2) Plaintiff fails to state a claim as to Counts V and VIII; and (3) Stark is entitled to qualified immunity. Stark also contends that Plaintiff's request for punitive damages must be stricken.

Arcadis argues that the Amended Complaint must be dismissed because (1) Arcadis was acting as an agent of the State and is therefore entitled to Eleventh Amendment immunity on all claims; (2) Plaintiff lacks standing to pursue his claims against Arcadis because the Amended Complaint alleges they were assigned to him by his company; (3) Plaintiff does not have standing to pursue a claim for declaratory relief; (4) the Amended Complaint is an impermissible shotgun pleading; and (5) Counts III, IV, VII, XI, and XII fail to state claims.

Earth Tech argues that the counts against it in the Amended Complaint must be dismissed because (1) the Amended Complaint is an impermissible shotgun pleading; (2) Count IV fails to allege a duty owed by Earth Tech and how the duty was breached; and (3) Plaintiff does not have standing or the authority required to assert claims under the Florida RICO statute, and fails to allege any facts that Earth Tech was involved in any racketeering activity or a criminal enterprise as required to state a claim under Florida or Federal RICO.

**A. Shotgun Pleading.**

A shotgun pleading violates the requirement in Rule 8 of the Federal Rules of Civil Procedure that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Vibe Micro Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018);

*see* Fed. R. Civ. P. 8(a)(2).  A shotgun pleading fails to some degree to give the defendants adequate notice of the claims against them and the grounds on which each claim rests.  *Vibe Micro*, 878 F.3d at 1295.

There are four basic categories of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).  First, a shotgun pleading contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.*  Second, a pleading is shotgun if it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322.  Third, a pleading is shotgun if it does not separate each cause of action or claim for relief into a different count. *Id.* at 1323.  Fourth and finally, a pleading is shotgun if it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The Eleventh Circuit has criticized shotgun pleadings as wasting scarce judicial resources, inexorably broadening the scope of discovery, wreaking havoc on appellate court dockets, and undermining the public's respect for the courts.  *See Vibe Micro*, 878 F.3d at 1295; *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings wreak havoc on the judicial system. Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." (alteration and quotation marks omitted)).  Thus, the Eleventh Circuit has said that, even in cases where the parties do not raise a shotgun pleading issue, courts have a "supervisory obligation" to address shotgun pleading problems *sua sponte*. *Wagner*, 464 F.3d at 1275 ("Given the district court's proper

conclusions that the complaint was a shotgun pleading and that plaintiffs failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading *sua sponte*."); *see also Vibe Micro*, 878 F.3d at 1295 ("A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." (quotation marks omitted)).

Among other deficiencies, the Amended Complaint is replete with conclusory, vague, and immaterial facts. DE 7 at 26-71.[3] The Amended Complaint contains 50 paragraphs, many with numerous subparagraphs, that purport to be factual allegations and total approximately 20 pages. Each Count incorporates all of these factual allegations without any effort to separate which allegations relate to a particular count. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (failure to connect or separate which of numerous factual allegations related to particular counts resulted in "factual allegations that are immaterial to the underlying causes of action" and constituted a shotgun pleading); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (four counts that incorporated all 43 paragraphs of factual allegations, when the allegations appeared to relate to only some, if any, counts, was an "all-too-typical shotgun pleading."). As a result, it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) (quoting *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

In addition, under several counts, it is difficult to determine exactly what relief Plaintiff seeks, and the vague and conclusory allegations often do not fit the cause of action. For example,

---

[3] All references to pagination follow the page numbers generated by the CM/ECF system and stamped at the top of each page.

in Count I for declaratory relief, Plaintiff seeks "an exoneration for [Plaintiff] or the benefits of limitation of liability of future action brought against the LSC-Plant site as a result of the new discharge or other condition of pollution, along with expert witness fees, on the grounds that such an award is in the public interest." *Id.* at 27.  As another example, in Count X, Plaintiff asserts a claim under 42 U.S.C. § 1983 alleging deprivation of his rights under the Eighth Amendment and Fourteenth Amendment by various FDEP Defendants based on Notices of Violation that assessed fines against him, placement of Plaintiff "in non-compliance status," and initiation of a criminal investigation into Plaintiff. *Id.* at 52-55.  However, he alleges no facts to explain how these actions deprived him of any constitutional or statutory rights, simply setting forth vague and conclusory allegations such as the following: "**Count10Defendants** violated his *8th amendment* rights by subjecting him to *'cruel and unusual punishment'* when they initiated an administrative proceeding against [Plaintiff], and in furtherance of the *'cruel and unusual punishment'* **Count10Defendants** *'impose excessive fines'* on [Plaintiff]." *Id.* ¶ 172 (emphasis in original). As a further example, the Amended Complaint alleges that various Defendants conspired to keep Plaintiff "in non-compliance status" in order to punish him with a criminal investigation and interfere with his rights, but alleges no facts about any communications, agreements, or acts performed in furtherance of any kind of conspiracy. *Id.* at *e.g.* ¶¶ 111, 129-33.  *See Barmapov*, 986 F.3d at 1325-26 (vague and conclusory allegations that leave a "a defendant who reads the complaint . . . hard-pressed to understand 'the grounds upon which each claim [against him] rests'" result in an impermissible shotgun pleading) (quoting *Weiland*, 792 F.3d at 1322-23).

The Amended Complaint also asserts claims against multiple defendants in every count, and in many cases fails to specify which Defendant is responsible for what conduct. For example,

in Count I, Plaintiff alleges that five different Defendants could be responsible for discharging contaminants, but does not specify how each Defendant contributed to any alleged contamination or any actions any Defendant took, or did not take. DE 7 at 26-27. Each count also lumps multiple Defendants under such categories as "Count5Defendants," fails to distinguish among these Defendants, and refers to them by such titles as "Inspector1" and "Employee1" rather than their names, making it extremely difficult to ascertain which allegations correspond to which Defendants. DE 7 at 26-70. In Counts VIII, IX, and XI, Plaintiff asserts claims against as many as eight different Defendants, references the titles he created for those Defendants, and discusses communications he had with various individuals but fails to allege facts regarding what any individual Defendant said or did. *Id.* at 49-51. As another example, Plaintiff asserts Count XI against "Count4Defendants" and "Count10Defendants," then asserts Count XII against "Count4Defendants" with no factual allegations at all for any particular Defendant. *Id.* at 56-63. Similar examples exist for the rest of the counts. These counts and allegations fall squarely within the definition of a shotgun pleading under *Weiland*, "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323.

As a result, all Counts of the Amended Complaint are dismissed against all Defendants as a shotgun pleading, with limited leave to amend. In addition to the Amended Complaint constituting a shotgun pleading, each Count falls short of federal pleading standards and fails to state a claim, as described below.

**B.**     **Eleventh Amendment Immunity**

1.   <u>FDEP Immunity</u>

"The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state." *Schopler v. Bliss,* 903 F.2d 1373, 1378 (11th Cir.1990). The resulting immunity from suit in federal court extends to state agencies acting under the state's control. *Id.*; *Williams v. Dist. Bd. of Trs. Of Edison Cmty. Coll.*, 421 F.3d 1190, 1192 (11th Cir. 2005) ("The law is 'well-settled that Eleventh Amendment immunity bars suits brought in federal court when an arm of the State is sued.'") (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This immunity also bars both federal and state law claims against the agency. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Eleventh Amendment immunity may be lost only if Congress abrogates a state's immunity or the state waives immunity for a certain type of suit. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54-56 (1995); *Hill v. Dep't of Corrections, State of Fla.*, 513 So. 2d 129, 131 (Fla. 1987).

To determine whether an entity is an arm of the state for Eleventh Amendment purposes, courts consider how the state defines the entity, what degree of control the state maintains over the entity, where the entity derives its funds, and who is responsible for judgment against the entity. *Williams*, 421 F.3d at 1192.

FDEP, which includes FDEP-Waste, FDEP-Counsel, and FDEP-SE, is clearly a Florida agency that functions as an arm of the State of Florida, as it is defined as an agency under Florida law; has the statutory power and duty to control and prohibit water and air pollution including promulgating regulations; has the authority to conduct studies, investigations, and research relating

12

to pollution; is required by the state to implement programs to reduce and eliminate environmental contamination; must enforce violations of Florida statutes and address prevention and removal of pollutants, among other powers and responsibilities; and derives its funding from the state. Fla. Stat. §§ 20.03(11), 403.061, 403.121, 376.051. *See also Clark v. Ashland, Inc.*, No. 2:13-cv-794, 2017 WL 468213, at *12 (M.D. Fla. Feb. 3, 2017) (FDEP entitled to Eleventh Amendment immunity as a state agency); *Marshall v. Dep't of Env. Protection*, No. 06-cv-22391, 2007 WL 9706001, at * 2 (S.D. Fla. Mar. 5, 2007) (same).

Congress has not abrogated FDEP's immunity for the types of claims Plaintiff asserts, and the state has not waived immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-67 (1989) (term "person" in § 1983 did not include the state, and statute did not abrogate immunity); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1277-78 (11th Cir. 2021) (summarizing Supreme Court decisions regarding § 1983 claims against states); *Palm Beach Cnty. Env't Coal. v. Fla.*, 651 F. Supp. 2d 1328, 1338 (S.D. Fla. 2009) (RICO claims and Florida statutory claims against state barred by sovereign immunity); *Clark*, 2017 WL 468213, at *13 ("It is clearly established that section 1983 has not waived Florida's Eleventh Amendment immunity" and FDEP was immune) (citing *Cross v. Ala. State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995)).

The individual FDEP Defendants argue that Plaintiff sues them in their official capacities and, therefore, they are entitled to sovereign immunity. DE 26 at 8. Sovereign immunity generally applies in a suit against state officials in their official capacity. *Harbert Int'l v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). However, the Amended Complaint alleges that each individual FDEP Defendant is sued in his or her

individual capacity, and the Eleventh Amendment does not shield state employees from liability in their individual capacities. *See Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575-76 (11th Cir. 1994); *Taylor v. Fla. Highway Safety*, 816 F. App'x 372, 374 (11th Cir. 2020).

Accordingly, Count XIII against FDEP, FDEP-Waste, FDEP-Counsel, and FDEP-SE is barred by the Eleventh Amendment and dismissed with prejudice.

2. Arcadis' Immunity

Arcadis argues that it was acting as an agent of the State of Florida and is therefore entitled to Eleventh Amendment immunity. Eleventh Amendment immunity may extend to an official or entity when it acts as "an arm of the state." *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016). When determining whether an entity is acting as an arm of the state, courts consider "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)). While officials such as law enforcement officers have been considered arms of the state, the Supreme Court has not addressed whether a private entity may fall into that category. The Eleventh Circuit once concluded that a private entity was an arm of the state but has since abrogated the test applied in that case. *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308 (11th Cir. 2000); *Lake*, 840 F.3d at 1337.

Arcadis argues that it is an arm of the state because (1) it carries out functions that FDEP is statutorily required to perform, such as site assessments and cleanup of dry cleaning facilities; (2) FDEP exercises control over Arcadis through the applicable contract; (3) Arcadis receives payment for its services from the State; and (4) FDEP could potentially be found liable for a judgment based on Arcadis' actions under the contract. DE 57 at 5-7. Arcadis cites *Lovelace v.*

14

*G4S Secure Solutions (USA), Inc.*, 320 So.3d 178 (Fla. 4th Dist. Ct. App. 2021) in which the court determined that a company that contracted with Broward County, Florida to provide security at various county facilities was an agent of the county and state when the county exercised control over the company and created an agency relationship. DE 7. However, (1) *Lovelace* does not discuss the factors required by the Eleventh Circuit and (2) the factual record in this case is not sufficiently developed to determine whether Arcadis could be acting as an arm of the state for Eleventh Amendment immunity purposes.[4] *See S.K. v. Lutheran Servs. Fla., Inc.*, 2018 WL 2100122 (M.D. Fla. May 7, 2018) (determining that at the pleading stage, defendant community-based agency to which State outsourced foster care services had not shown it was an arm of the state). Thus, the Court declines to find that Arcadis is acting as an arm of the state at this time.

## C.     Qualified Immunity for FDEP Individual Defendants (Counts V, VIII-XI)

The defense of qualified immunity protects government officials who are performing discretionary functions from suit unless the officials' conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The purpose of qualified immunity "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). It protects from suit "all but the plainly

---

[4] Arcadis attaches (1) the Declaration of Douglas McGlone, a Project Manager and Principal Scientist for Arcadis, and (2) a copy of the contract between FDEP and Arcadis in support of Arcadis' contention that it is an arm of the state. However, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court does not generally consider matters outside the complaint. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). A court may consider a document attached to a motion to dismiss without converting the motion into a motion for summary judgment "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed," meaning "the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). At this stage, the Court will not make determinations as to the materiality or authenticity of the attachments to Arcadis' Motion to Dismiss.

incompetent or one who is knowingly violating the federal law." Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," it should be resolved "at the earliest possible stage in litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). It is therefore appropriate for a district court to grant a motion to dismiss on qualified immunity grounds if the complaint "fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

A government official acts within his or her discretionary authority if the actions were "(1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017). Courts "look to the general nature of the defendant's action," *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004), in determining whether the defendant is acting within discretionary authority and asks "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Mikko*, 857 F.3d at 1144.

The allegations against the individual FDEP Defendants (Hamilton, Daniels, Pepe, Dalton, Cohen, Ballard, Kichler, Andreotta, Davila, Blandin, Irwin, Stark, and Lancellotti) indicate that their actions were undertaken as part of their respective duties within the FDEP and within the scope of their authority. The Amended Complaint identifies the individual FDEP Defendants' positions and duties within FDEP, describes actions undertaken with respect to those duties, and alleges that the individual FDEP Defendants acted "under color of law."   DE 7 at 7-10. For example, the Amended Complaint alleges that Dalton is an FDEP geologist who submitted a memorandum to Pepe, an FDEP contract manager, regarding contamination at the LSC site that required remediation; that Lancellotti, an FDEP inspector and environmental specialist, performed

an inspection of the LSC site and submitted a report; that Irwin, an environmental manager, notified Plaintiff that FDEP had 300 days to review his submission; and that Lancellotti and Stark, an environmental specialist, advised Plaintiff during a conference call that FDEP believed LSC had discharged perchloroethylene, among other similar allegations. DE 7 ¶¶ 33, 35, 38, 40. All of these actions clearly fall within the individual FDEP Defendants' job duties and scope of authority.

Next, a Plaintiff must allege facts to show that the individual FDEP Defendants violated a constitutional right that was clearly established at the time of their conduct:

> A plaintiff can show that "a right is 'clearly established' for qualified immunity purposes in three ways: (1) pointing to a 'materially similar case' decided by the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court that clearly establishes the statutory right; (2) showing that 'a broad statement of principle within the Constitution, statute, or case law ... clearly establishes [the] constitutional right'; and (3) demonstrating that the defendants engaged in "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."

*Wilson v. Sec'y, Dep't of Corrections*, 54 F.4th 652, 660 (11th Cir. 2022) (citing *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015)) (internal citations omitted). While the Amended Complaint contains various references to the U.S. Constitution, it fails to allege any facts that could underpin FDEP Defendants' violation of a clearly established right. For example, in Count V, Plaintiff brings a claim for "Deprivation of Rights Under the Color of Law" pursuant to 42 U.S.C. § 1983 against Lancellotti and Stark and complains that the Defendants prevented him from recording their inspection of the LSC property in violation of Plaintiff's First Amendment rights.  DE 7 ¶¶

89-98. However, the Court is unaware of a clearly established right to take video recordings of an agency's inspection of a business, and Plaintiff's Response provides none.[5]

As another example, in Count VIII, Plaintiff asserts a claim for "Conspiracy to Interfere With Civil Rights" under 42 U.S.C. § 1985 and citing the Fifth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution along with various federal statutes. *Id.* ¶¶ 126-52. Plaintiff alleges that five of the FDEP Defendants conspired to compel him to perform a site assessment and confirmatory sampling, telling Plaintiff that FDEP would issue a formal notice of violation if Plaintiff did not cooperate. *Id.* ¶¶ 132-52. Plainly, it is within the individual FDEP Defendants' roles to require Plaintiff to conduct a site assessment and sampling in order to avoid environmental contamination, and the Court is unaware of any clearly established right for Plaintiff to evade FDEP requirements.

Plaintiff's remaining claims against the individual FDEP Defendants fare no better, as the Amended Complaint alleges no facts to show these Defendants acted outside the scope of their discretionary duties, nor any facts to indicate that these Defendants violated a clearly established right. Further, because the Amended Complaint fails to allege those facts, it also fails to state a claim under § 1983. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003) ("To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.") (quoting *Am.*

---

[5] The Amended Complaint cites *Blackston v. State of Ala.*, 30 F.3d 117, 120 (11th Cir. 1994) for the proposition that he has the right under the First Amendment to record FDEP's inspection of the LSC premises. DE 7 ¶ 96. However, the *Blackson* court simply determined that an alleged prohibition on recording an open, public meeting of the Alabama Supreme Court Advisory Committee on Child Support Guidelines should proceed beyond the pleading stage. *Blackson*, 30 F. 3d at 120.

*Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Accordingly, Counts VIII-IX against Defendants Hamilton, Daniels, Pepe, Dalton, Cohen, Ballard, Kichler, Andreotta, Davila, Blandin, Irwin, Stark, and Lancellotti are dismissed with leave to amend. Should Plaintiff choose to amend these claims against these Defendants, he must identify the specific constitutional right that was violated, facts that support the violation, which Defendant committed the violation and in what specific manner, and how the violation fell outside the scope of the Defendant's duties.

### D.     Defamation Claim (Count VI) Against Andreotti, Irwin, and Lancellotti

In Count VI, Plaintiff asserts a claim for defamation per se against Andreotti, Irwin, and Lancellotti. Plaintiff alleges that Irwin and Lancellotti performed an inspection of the LSC property and issued a series of violations that were known to be false, without further explanation as to the content of the violations or how anyone knew they were inaccurate. DE 7 ¶ 103. Plaintiff resolved some of the violations, but Irwin and Lancellotti later returned, re-issued the violations, and issued two additional violations. *Id.* ¶ 105.  Plaintiff then received an official warning letter from FDEP "outlining the same meritless violations." *Id.* ¶ 108. Plaintiff also was apparently classified by FDEP as a "Significant Non-Complier" in the "FDEP/EPA database." *Id.* ¶ 109. Without providing underlying facts, Plaintiff alleges that his race and personal animus motivated this classification. *Id.*

Count VI fails to state a claim because Andreotti, Irwin, and Lancellotti are protected by immunity for any statements made in connection with the performance of their official duties. "Absolute immunity expansively protects statements made by public officials 'in connection with the performance of the duties and responsibilities of their office.'" *Diaz v. Miami-Dade County*, 424 F.Supp.3d 1345, 1365 (S.D. Fla. 2019) (*quoting McNayr v. Kelly*, 184 So. 2d 428, 433 (Fla.

1966)); *see also Alfino v. Dep't of Health and Rehab. Servs.*, 676 So.2d 447, 449 (Fla. 5th Dist. Ct. App. 1996) (public employees are absolutely immune from actions for defamation for communications made in the scope of duties). Conduct is within the scope of employment "if it is the type of conduct which the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer." *Id.* (citing *Craft v. John Sirounis & Sons, Inc.*, 575 So. 2d 795 (Fla. 4th Dist. Ct. App. 1991)). All of the alleged communications were clearly within the scope of Defendants' employment, as they concern the inspection of the LSC property, issuance of violations, and record-keeping in government databases, exactly the type of work Defendants were hired to perform by their employer. The communications also occurred during the time and space limits for Defendants' work to be performed, and the communications were made to serve Defendants' employer. Accordingly, Count VI is dismissed with prejudice.

**E.     Civil Rights Claims Against Individual FDEP Defendants (Counts V, VIII-X)**

In Counts VIII-X, Plaintiff alleges that various FDEP Defendants conspired to interfere with his civil rights and violated his rights pursuant to a multitude of constitutional amendments and statutes, including the Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1985(c), 42 U.S.C. § 1986, 18 U.S.C. § 241, 18 U.S.C. § 242, 22 U.S.C. § 7102, and Fla. Stat. § 376.3078(3)(a).   These counts fail to state a claim for various reasons explained below.

     1.   Count V – Deprivation of Rights Under 42 U.S.C. §§ 1983, 1985

In Count V, Plaintiff alleges that his First Amendment rights were violated when Stark and Lancellotti told Plaintiff's employee to stop recording the site inspection and warned him that if

he continued recording, he would be deemed obstructing or hindering the inspection. DE 7 ¶¶ 93-95. As described above, there does not appear to be any right to record a site inspection performed by a state agency. Further, in determining "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," courts consider whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 410-11 (1974)); *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1335-36 (11th Cir. 2021). Courts have held that the First Amendment protects recording public matters on public property such as town council meetings or police conduct; however, recording an inspection of private property does not fall within this category. *See McDonough v. Rundle*, No. 15-cv-20038, 2015 WL 13594407, at *2-3 (S.D. Fla. Feb. 10, 2015) (audio recording of public officials discussing official business was protected); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within these principles."); *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1123 (M.D. Fla. 2019) (explaining that ordinance that prohibited recording a person without consent in city hall was reasonable); *Cornelius v. NAACP Legal Def. & Edu. Fund, Inc.*, 473 U.S. 788, 809 (1985) (restricting activities in nonpublic or limited public forum need only be reasonable). Thus, prohibiting Plaintiff from recording the inspection does not violate Plaintiff's First Amendment rights; Count V is dismissed with prejudice.

2.  <u>Count VIII – Conspiracy Under 42 U.S.C. § 1985</u>

In Count VIII, Plaintiff asserts a claim for conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(c),[6] alleging that five different individuals conspired to deprive Plaintiff of his rights under Fifth, Thirteenth, and Fourteenth Amendments as well as various statutes. DE 7 ¶¶ 126-52. To state a claim under § 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving any person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) harm the conspiracy caused. *Trawinski v. United Tech.,* 313 F.3d 1295, 1299 (11th Cir. 2002). The plaintiff must also allege that the conspiracy was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir.1993) (quoting *Griffin v. Breckenridge,* 403 U.S. 33, 101-02 (1971)).

Plaintiff alleges that Defendants required Plaintiff to perform a site assessment against his will, issued meritless violations against Plaintiff, kept Plaintiff's business in a "perpetual state of non-compliance," forced Plaintiff to perform confirmatory sampling at the LSC site, and informed Plaintiff that if he failed to perform the confirmatory sampling, FDEP would issue a formal notice of violation. DE 7 at ¶¶ 126-52. Plaintiff contends that these actions violated his rights to freedom from involuntary servitude under the Thirteenth Amendment and his rights to due process under the Fifth and Fourteenth Amendments, and also constituted "abuse of law or legal process." *Id.* 129-30. However, Plaintiff alleges no facts as to how this conduct could constitute a violation of any of his rights or meet any of the elements for a conspiracy, nor does Plaintiff allege that the conduct involved invidious discriminatory intent as required under § 1985, and appears to concede

---

[6] The Amended Complaint cites § 1985(c), which the Court construes as § 1985(3).

22

in his Response that his civil rights claims are inadequately pled.[7] DE 42 at 10. Because Plaintiff fails to allege sufficient facts to state a claim under § 1985, Count VIII is dismissed without prejudice. Should Plaintiff replead a claim under § 1985, he must allege specific facts regarding specific Defendants in support of each element of his claim under laws that apply to the claim, including specific facts showing the formation of a conspiracy, that the conspiracy's purpose was to deprive him of equal protection of the laws, how the conspiracy deprived him of such protection, specific acts in furtherance of the conspiracy, harm the conspiracy caused, and precisely how the conspiracy was motivated by a discriminatory animus.

    2.   Count IX – 42 U.S.C. § 1986

In Count IX, Plaintiff asserts a claim for "Neglect to Prevent" under 42 U.S.C. § 1986 against eight different FDEP Defendants. DE 7 ¶¶ 153-63. Plaintiff alleges that he "communicated his frustrations" regarding FDEP's actions to these Defendants and hoped that two of them would intervene to end the "undeserved punishment" Plaintiff faced. DE 7 ¶ 158. Plaintiff responded to the "EmailChain" that included all of the Defendants and sought assistance as to why he was being subjected to "punishment," but "no one would acknowledge [his] plight" or "come to [his] aid or rescue from the tyranny of the FDEP." *Id.* ¶¶ 160-62.

---

[7] In addition, the Thirteenth Amendment, which prohibits involuntary servitude, does not apply in this case. Plaintiff appears to rely on a theory that FDEP and some of the FDEP Individual Defendants forced him to perform a site assessment. When a plaintiff relief on a theory that his "involuntary servitude was accomplished through legal coercion, the plaintiff must show that [he] 'had no available choice but to work or be subject to legal sanction.'" *Cadet v. Alliance Nursing Staff of N.Y., Inc.*, --- F. Supp. 3d ----, 2022 WL 4584246 (S.D.N.Y. Sept. 29, 2022) (individual threatened with prosecution under state laws if she did not remain on her job assignment was not subject to involuntary servitude). Plaintiff does not allege he was held against his will, forcibly coerced to do anything, or had no available choices. *See United States* v. *Kozminski*, 487 U.S. 931, 943 (1988) ("[I]n every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."). The Court does not see how the Thirteenth Amendment could be implicated under these circumstances, and dismisses with prejudice any claim based on this Amendment.

Section 1986 provides, in relevant part, "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . ." 42 U.S.C. § 1986.  A section 1986 action "is predicated on a successful conspiracy action under § 1985." *Moore v. Potter*, 141 F. App'x 803, 806-07 (11th Cir. 2005) (quoting *Morast v. Lance*, 807 F.2d 926, 930 (11th Cir. 1987)); *Farese v. Sherer*, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003) (where there is no underlying conspiracy under § 1985, the derivative § 1986 claim also fails). Because the Amended Complaint fails to state a claim for conspiracy under section 1985, it also fails to state a claim under section 1986. Count IX is dismissed without prejudice. Should Plaintiff replead a claim under § 1986, he must allege specific facts regarding specific Defendants, including the specific rights Plaintiff alleges were violated, and precisely how each Defendant knew of the violation and neglected or refused to stop the violation.

### 3. Count X – 42 U.S.C. § 1983

In Count X, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against five FDEP Defendants, alleging violation of his rights under the Eighth and Fourteenth Amendments as well as Florida Statutes § 376.3078(3)(a).  DE 7 ¶¶ 164-73. Plaintiff alleges he was subjected to cruel and unusual punishment as well as excessive fines because Defendants deliberately classified him as non-compliant, initiated a criminal investigation against him without performing a proper investigation, initiated an administrative proceeding against him, and assessed administrative penalties pursuant to Florida Statutes § 403.727(3)(a) against him totaling $81,460. *Id.* ¶¶ 168-69, 171-72.

The Eighth Amendment's prohibition of cruel and unusual punishment is applicable only to individuals who have been convicted of crimes. *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1971) ("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). However, "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense" and can apply to cases in which a government imposes a fine or penalty. *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021) (analyzing monetary awards in False Claims Act cases under the Eighth Amendment); *Austin v. United States*, 509 U.S. 602, 609 (1993). There is a "strong presumption of constitutionality" for fines imposed within the range prescribed by the legislature, particularly if they fall below the maximum for a given offense. *United States v. 817 Ne. 29th Drive, Wilton Manors*, 175 F.3d 1304, 1309 (11th Cir. 1999); *see also Gonzalez v. U.S. Dep't of Commerce Nat'l Oceanic & Atmospheric Admin.*, 420 F. App'x 364, 370 (5th Cir. 2011) (fines imposed do not violate Eighth Amendment if they do not exceed the limits prescribed by statute) (quoting *Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 210 (5th Cir. 2010)).

Regarding excessive fines, the allegations as pled do not support Plaintiff's claim. Florida Statute § 403.727(3)(a) provides that "[a]ny person who violates this act, the rules or orders of the department, or the conditions of a permit is liable to the state for any damages specified in s. 403.141 and for a civil penalty of not more than $75,000 for each day of continued violation." Fla. Stat. § 403.727(3)(a). Plaintiff alleges that Defendants—without specifying which Defendant— imposed fines under Florida Statute § 403.727(3)(a) for five separate violations as follows: (1) $4,250 for failure to allow site access for inspection; (2) $710 for failure to keep records onsite

and readily available for inspection; (3) $500 for failure to provide secondary containment for dry-cleaning solvents; (4) $37,500 for failure to comply with departmental standards for discharges of pollutants; and (5) $37,500 for failure to properly treat or dispose of hazardous waste. DE 7 ¶ 168. But Plaintiff does not explain how these fines are excessive, and they are well within the limits of the statute Plaintiff cites. Indeed, the fines could have been significantly higher and still fallen within the amounts the statute provides. Accordingly, Plaintiff's Eighth Amendment claim fails as a matter of law and is dismissed with prejudice.

Plaintiff also appears to allege he was denied equal protection under the law in violation of the Fifth and Fourteenth Amendments, but provides no further information or facts to support this claim. Plaintiff's claim that he was denied equal protection under the law must be brought under the Fourteenth Amendment, not the Fifth Amendment. *See* U.S. Const. amend. V, XIV. Thus, Count X also fails for this reason. Accordingly, Count X is dismissed without prejudice as to Plaintiff's claim under the Fourteenth Amendment and dismissed with prejudice as to the claims under the Fifth and Eighth Amendments.

### F.     Florida and Federal RICO Claims (Counts XI-XII)

The Amended Complaint asserts Count XI under Florida's criminal RICO statute, Fla. Stat. § 895.05(6), and Count XII under the Federal RICO statute, 18 U.S.C. §§ 1962, 1964(c).

To state a Florida RICO claim, a plaintiff must allege facts to show (1) conduct or participation in an enterprise through (2) a pattern of racketeering activity. *Lugo v. State*, 845 So.2d 74, 97 (Fla. 2003). Regarding the "enterprise" element, a plaintiff must also allege the following subelements: (1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit. *Id.*; *Horace-Manasse v. Wells*

*Fargo Bank, N.A.*, 521 F. App'x 782, 784 (11th Cir. 2013). The elements of a federal civil RICO claim are "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Palm Beach Cnty. Env. Coalition v. Fla.*, 651 F. Supp. 2d 1328, 1348-49 (S.D. Fla. 2009) (quoting *Langford v. Rite Aid of Ala., Inc.,* 231 F.3d 1308, 1311 (11th Cir.2000). "[T]o survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 949 (11th Cir.1997); *Rogers v. Nacchio,* 241 F. App'x 602, 607 (11th Cir. 2007). A plaintiff must also allege that "each defendant participated in the affairs of the enterprise through a 'pattern of racketeering activity,' which requires 'at least two acts of racketeering activity.'" *Colombian Air Force Purchasing Agency (ACOFA) v. Union Temporal OVL CVRA Helicopteros 2018 LLC,* No. 21-cv-62516, 2022 WL 18463418, at *3 (Dec. 27, 2022) (quoting *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020)).

To successfully allege a pattern of racketeering activity, a plaintiff must plead facts showing that the defendants committed two or more predicate acts that were related to each other and demonstrated criminal conduct of a continuing nature. *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, 2022 WL 16968426, at *7 (S.D. Fla. Nov. 16, 2022) (citing *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004)); *see also Cisneros*, 972 F.3d at 1215 (predicate act "includes any of a long list of state and federal crimes).

Because "Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,]" the analysis of federal RICO claims is equally applicable to their state RICO claims." *Jackson*, 372 F.3d at 1263-64 (citing *Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp.,* 46 F.Supp.2d 1276, 1284 (M.D.Fla.1999) and *All Care Nursing*

*Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir.1998) ("Florida's RICO statutes have consistently been interpreted using federal RICO claim cases.")).

Plaintiff alleges no facts in support of his RICO claims; rather, he states legal conclusions and incorporates by reference allegations from other counts for his Florida RICO claim that do not support his claims, and he alleges no facts at all with respect to his federal RICO claim. DE 7 ¶¶ 185, 189-96. Further, the Amended Complaint's allegations come nowhere near what could be considered racketeering activity, as no crimes are alleged, no facts regarding any kind of ongoing conspiracy or pattern of criminal activity are alleged, and no other facts that could satisfy any elements of RICO are contained in the Amended Complaint. As a result, Counts XI-XII are dismissed with prejudice.[8]

## G.     Negligence Per Se Claim (Count III)

Count III alleges negligence per se under Florida Statutes § 556.106(2)(a), which provides, "If a person violates s. 556.105(1) or (6), and subsequently, whether by himself or herself or through the person's employees, contractors, subcontractors, or agents, performs an excavation or demolition that damages an underground facility of a member operator, it is rebuttably presumed that the person was negligent." Fla. Stat. § 556.106(2)(a). An "excavation" is defined as "any manmade cut, cavity, trench, or depression in the earth's surface, formed by removal of earth, intended to change the grade or level of land, or intended to penetrate or disturb the surface of the earth . . . ." Fla. Stat. § 556.102(7).  A "member-operator" is defined as "any person who furnishes or transports materials or services by means of an underground facility." *Id.* § 556.102(10).  An

---

[8] The Court notes that Plaintiff, in his Motion for Leave to Amend Complaint, [DE 73] appears to recognize that the Amended Complaint fails to state a claim and would have been dismissed, as he does not include it in his proposed Second Amended Complaint.

"underground facility" is defined as "any public or private personal property which is buried, placed below ground, or submerged on any member operator's right-of-way, easement, or permitted use which is being used or will be used in connection with the storage or conveyance of water; sewage; electronic, telephonic, or telegraphic communication; electric energy; oil; petroleum products; natural gas; optical signals; or other substances, and includes, but is not limited to, pipelines, pipes, sewers, conduits, cables, valves, and lines." *Id.* § 556.102(16).

Plaintiff alleges that he is a "member operator" under the statute, that the LSC site's septic tank is an "underground facility," and that the surveying and drilling work performed by Arcadis and GPI damaged the septic tank as well as pipes leading to and from the tank. DE 7 ¶¶ 70-73. He further alleges that the Defendants caused the discharges at issue, which in turn caused damage to Plaintiff. *Id.* ¶¶ 73-76.

Arcadis argues that Florida Statute § 556.106 does not apply to the circumstances in this case because (1) Plaintiff is not a "person who furnishes or transports materials or services by means of an underground facility" and therefore not a "member operator" who may impose liability under the statute; and (2) a septic tank is not an "underground facility" for purposes of this statute. DE 57 at 14-15. Arcadis further argues that this statute was intended to govern underground pipes, wiring, waterlines, and similar utilities that allow transport and flow of materials or communications. The Court agrees. Section 556.101, which provides the legislative intent for the entire chapter, makes it clear that this chapter was designed to prevent damage to utility systems, underground pipelines, and large facilities during underground excavations. *See* Fla. Stat. § 556.101(3)(a) (explaining that a purpose of this chapter is to "[a]id the public by preventing injury to persons or property and the interruption of services resulting from damage to an underground

29

facility caused by excavation or demolition operations."); *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1338 (11th Cir. 2019) ("The Act permits utilities to recover damages when construction workers negligently damage utility lines"); *Martin v. Fla. Power & Light Co.*, 909 So.2d 555, 556 (Fla. 4th Dist. Ct. App. 2005) (statute "creates uniform statewide procedures for determining the existence of underground utilities prior to excavation"). Clearly, section 556.106 was not designed to apply to damage caused to an individual septic tank, nor does Plaintiff meet the definition for a member-operator. Even if it were meant to apply to Plaintiff's property, Plaintiff still fails to allege facts regarding specifically what the Defendants did to cause damage, which Defendant caused damage, what kind of damage was caused, and how the statute is implicated. Accordingly, Plaintiff's claim for negligence per se under Florida Statutes § 556.106 is dismissed with prejudice.

## H.     Fraudulent Concealment Claim Against Arcadis (Count VII)

To state a claim for fraudulent concealment under Florida law, Plaintiff must allege: (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017).

"A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 879-80 (Fla. 4th Dist. Ct. App. 2000) (citing *Don Slack Ins., Inc. v. Fidelity & Cas. Co. of N.Y.,* 385 So.2d 1061 (Fla. 5th DCA 1980)). "[S]uch duty arises when one party has information

that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* (quoting *State v. Mark Marks, P.A.,* 654 So.2d 1184, 1189 (Fla. 4th DCA 1995)), *approved by,* 698 So.2d 533 (Fla. 1997) (citation omitted); *see also Solar Eclipse Inv. Fund VII, LLC v. T-Mobile USA, Inc.*, 2021 WL 4067911, at *4-5 (S.D. Fla. Aug. 16, 2021).

Plaintiff alleges that Arcadis "had a duty to disclose their current and previous suspensions of free product" and had a duty to report to FDEP that Defendant GPI damaged a pipeline at the LSC site, but fails to identify the source of this duty.[9]  DE 7 ¶¶ 114, 118. Plaintiff then alleges that Arcadis breached its duty when it failed to report to FDEP that GPI damaged the septic pipeline at the LSC site, failed to mention "previous suspensions of free product," and failed to disclose that GPI had been negligent in the past regarding underground drilling and causing contamination. *Id.* ¶¶ 119-21. However, Plaintiff does not allege any facts to show Arcadis had a fiduciary or other relation of trust between them, as Plaintiff merely alleges that Arcadis was a contractor that failed to disclose alleged negligence on the part of another contractor. *Id.* As a result, Count VII fails to state a claim and is dismissed without prejudice. In any amendment, Plaintiff must provide specific facts to identify the nature of any duty he alleges, describe the nature of the duty, how the duty is important, how a relationship of confidence or trust existed between Plaintiff and each Defendant, and how each Defendant breached the duty.

## I.      Claims for Declaratory Relief (Counts I-II)

In Count I, Plaintiff alleges that he does not know who is responsible for the discharge or other pollution and seeks (1) a declaration that Defendants FDEP, FDEP-SE, FDEP-Waste

---

[9] Plaintiff also appears to rely on various inapplicable statutes, including Fla. Stat. § 376.302, which provides for liability to the state and civil penalties for damage caused by pollution; 18 U.S.C. § 1519, which imposes criminal liability; and Fla. Stat. § 556.105, which the Court has already ruled does not apply to this case.

"and/or" Arcadis are the responsible parties, (2) exoneration of Plaintiff as the responsible party, and (3) limited liability against any future action brought against the LSC site. DE 7 ¶¶ 51-58. In Count II, Plaintiff asks the Court to enter a judgment declaring which violations issued against him were accurate and which were false. DE 7 ¶¶ 59-66.

To demonstrate standing, a plaintiff must allege facts showing that he suffered an injury-in-fact that is "(a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'"; that  the injury is "fairly traceable to the challenged action of the defendant"; and that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). When a plaintiff seeks declaratory relief, "the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). "Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Malowney*, 193 F.3d at 1347.

The FDEP Defendants and Arcadis argue that Plaintiff does not have standing to assert claims for declaratory relief because the Amended Complaint fails to allege facts showing ongoing harm or future injury, and there is no requisite "case or controversy." DE 26 at 15-16; DE 57 at 9-10. The Court agrees. Plaintiff does not allege facts to show and immediate or definite threat of future injury. Plaintiff seeks declarations regarding who was responsible for the pollutants present at the LSC site and which notices of violations were appropriate, which all involve past actions

and alleged injuries. DE 7 ¶¶ 51-66. Plaintiff does request a declaration providing him with "the benefits of limitation of liability of future action brought against the LSC-Plant site as a result of the new discharge or other condition of pollution." DE 7 ¶ 58. However, this speculative and vague assertion is more "conjectural, hypothetical, or contingent" rather than "real and immediate" as required by the Eleventh Circuit. *See Strickland*, 772 F.3d at 883; *Malowney*, 193 F.3d at 1346-47. While Plaintiff alleges he received violations in the past, there are no allegations that FDEP intends to issue additional violations or otherwise cause harm to Plaintiff in the future. Further, the facts alleged indicate that Plaintiff was evicted from the LSC site and no longer operates his dry-cleaning business. DE 7 ¶¶ 38-41. Thus, potential for future harm is remote and speculative, and Counts I-II are dismissed with prejudice.

## J.     Count XIII

In Count XIII, Plaintiff seeks an injunction against FDEP for "the immediate remediation" of the LSC site and for "improved policies and procedures for identifying free product"; injunctive relief requiring the EPA "to properly assess and fine the FDEP" approximately $96,000,000; and "a temporary block on all memorandum of understanding and/or memorandum of agreements between the EPA and the FDEP until a comprehensive training can take place." DE 7 ¶¶ 214, 228.

Count XIII fails for multiple reasons. First, the Court has already determined that FDEP is entitled to Eleventh Amendment immunity. Second, the Amended Complaint alleges no facts whatsoever regarding the EPA and, even if it did, Plaintiff is barred from suing the EPA, as the United States has not expressly waived its sovereign immunity for this type of lawsuit and Plaintiff identifies no statute authorizing such a suit. *See Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1249 (11th Cir. 1996); *United States v. Idaho ex*

*rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 6 (1993) (U.S. must expressly and unambiguously waive its sovereign immunity before it can be sued). Plaintiff appears to cite the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a), which allows a citizen to commence a civil action in certain circumstances, such as when a person violates the CWA or the EPA Administrator fails to perform a nondiscretionary duty. However, again, the Amended Complaint contains no allegations that the EPA violated the Act or failed to perform a nondiscretionary duty and, even if it did, the CWA requires a plaintiff to provide pre-suit notice of the alleged violation, which Plaintiff does not allege. 33 U.S.C. § 1365(b). As a result, Count XIII is dismissed with prejudice.

**K.      Count IV (Violation of Fla. Stat. Chapter 376)**

In Count IV, Plaintiff alleges that Arcadis, GPI, and Earth Tech were negligent in handling the LSC site and caused pollution and contamination, and asserts a private cause of action under Florida Statutes § 376.313. DE 7 ¶¶ 82, 85-88. To state a claim under § 376.313, a plaintiff must allege that a prohibited discharge or other pollutive condition occurred and damages from the discharge or pollution. *Irizarry v. Orlando Util. Comm'n*, 393 F. Supp. 3d 1110, 1116 (M.D. Fla. 2019); *Clark v. Ashland*, No. 2:13-CV-794, 2015 WL 1470657, at *3 (M.D. Fla. Mar. 31, 2015). Plaintiff does allege that there was pollution or contamination, but fails to allege facts regarding how Defendants that caused the pollution and which Defendant is responsible for which act or omission that caused the pollution, in violation of Federal Rule of Civil Procedure 8(a). Accordingly, Count IV is dismissed without prejudice.

**L.      Punitive Damages**

The FDEP Defendants and Arcadis argue that Plaintiff's claim for punitive damages should be stricken, as Plaintiff fails to allege facts that could support punitive damages and therefore fails

to meet pleading standards. DE 26, DE 58. Arcadis filed a Motion to Strike under Federal Rule of Civil Procedure 12(f), and, while the FDEP Defendants included their arguments in their Motion to Dismiss, the Court construes those arguments under the Rule 12(f) standard. Rule 12(f) provides that "the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike is a drastic remedy disfavored by courts, but "[a] request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing wanton, willful or outrageous conduct." *Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350, 1352 (S.D. Fla. 2019).

The FDEP Defendants and Arcadis argue that for Plaintiff's state-law tort claims (Counts III, VI-VII), Florida's waiver of sovereign immunity does not include punitive damages and, therefore, Plaintiff cannot obtain punitive damages on those claims. *Id.* In Florida, a state agency may be liable for tort claims, "but liability shall not include punitive damages or interest for the period before judgment." *Plancher v. UCF Athletics Ass'n, Inc.*, 175 So.3d 724, 726 (Fla. 2015) (quoting Fla. Stat. 768.28(5)). Accordingly, Plaintiff cannot obtain punitive damages against FDEP for this reason. Because Arcadis is not a state agency, its argument for immunity from punitive damages fails, but the Amended Complaint fails to include factual allegations "showing wanton, willful or outrageous conduct." *Simmons*, 423 F. Supp. 3d at 1352; *ADT LLC v. Safe Home Sec. Inc.*, 2022 WL 2805252, at *6 (S.D. Fla. May 18, 2022) ("conduct required to allege punitive conduct reaches beyond simple negligence[ ] 'but must be based on behavior which indicates a wanton disregard for the rights of others.'" (quoting *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016)). Because the Court is dismissing all claims in the Amended Complaint,

Plaintiff's request for punitive damages is necessarily stricken. The Court warns Plaintiff that if he files a Second Amended Complaint and seeks punitive damages, he may not seek them against FDEP and must include factual allegations that meet the standard for punitive damages.

**M.     Plaintiff's Motion for Leave to Amend Complaint**

The Court notes that Plaintiff recently filed a Motion for Leave to Amend Complaint along with the proposed Second Amended Complaint ("SAC") DE 73; the Court has reviewed the SAC. The proposed SAC appears to eliminate some of the deficiencies identified in the Amended Complaint but fails to cure numerous others and maintains claims that the Court is dismissing with prejudice from the Amended Complaint in this Order. For example, each count in the proposed SAC no longer incorporates all previous allegations but identifies specific paragraphs that apply to the particular count, and Plaintiff attempts to attribute specific conduct to specific Defendants in some instances.  However, the proposed SAC still fails to allege specific facts relating to claims against particular Defendants in many instances. For example, the proposed SAC asserts some claims against "All [21] Defendants" and others against as many as eight different Defendants without specifying each Defendant's conduct as it relates to those claims. In addition, the proposed SAC names numerous individuals including Ballard, Kichler, Pepe, Dalton, Cohen, Andreotta, Davila, Hamilton, and Daniels, but alleges few, if any, specific facts attributable to them. This is not to say that Plaintiff's claims in the proposed SAC are sufficient to state claims against other Defendants. The Court merely points out that Plaintiff cannot simply name every FDEP employee he came into contact with and accuse them of wrongdoing in a lawsuit; he must allege specific facts explaining what each individual did or said that supports a valid claim for relief.

36

The proposed SAC also asserts claims that this Court dismisses with prejudice in this Order. For instance, the proposed SAC includes a claim alleging that Plaintiff's First Amendment rights were violated when he was told to stop recording the inspection of the LSC premises, but the Court concludes in this Order that this claim fails as a matter of law and is dismissed with prejudice. As another example, Plaintiff asserts defamation claims against FDEP employees when the Court is dismissing the defamation claim in the current Amended Complaint with prejudice. Plaintiff also continues to maintain a claim for negligence per se under statutory provisions the Court concludes do not apply to him. As a result, the Court denies Plaintiff's Motion for Leave to File Second Amended Complaint as moot, but will allow Plaintiff to amend his complaint consistent with this Order, as described below.

## IV.    CONCLUSION

Based on the foregoing, the Amended Complaint is dismissed in its entirety, with limited leave to amend. For ease of reference and understanding, below is a visual summary of which claims have been dismissed with prejudice and which claims Plaintiff may amend in accordance with the directives in this Order.

| Count | Defendant(s) | Result |
|---|---|---|
| I: Declaratory Relief | FDEP, FDEP-SE, FDEP-Waste, DSCP, Arcadis | Dismissed with prejudice. |
| II: Declaratory Relief | FDEP, FDEP-SE, FDEP-Counsel, Irwin, Lancellotti | Dismissed with prejudice. |
| III: Negligence Per Se | Arcadis, GPI | Dismissed with prejudice. |
| IV: Violation of Fla. Stat. §§ 376.30-376.317 | Arcadis, GPI, Earth Tech | Dismissed without prejudice. |
| V: 42 U.S.C. §§ 1983 & 1985 | Lancellotti, Stark | Dismissed with prejudice. |
| VI: Defamation | Andreotta, Irwin, Lancellotti | Dismissed with prejudice. |
| VII: Fraudulent Concealment | Arcadis | Dismissed without prejudice. |
| VIII: Conspiracy to Interfere with Civil Rights | Davila, Irwin, Lancellotti, Stark, Kichler | Dismissed without prejudice. |

| IX: 42 U.S.C. § 1986 | Blandin, Hamilton, Kichler, Ballard, Dalton, Cohen, Pepe, Daniels | Dismissed without prejudice. |
|---|---|---|
| X: 42 U.S.C. § 1983 | Andreotta, Davila, Irwin, Lancellotti, Kichler | Fifth and Eighth Amendment claims dismissed with prejudice; Fourteenth Amendment claim dismissed without prejudice. |
| XI: Florida RICO | Arcadis, GPI, Earth Tech, Andreotta, Davila, Irwin, Lancellotti, Kichler | Dismissed with prejudice. |
| XII: Federal RICO | Arcadis, GPI, Earth Tech | Dismissed with prejudice. |
| XIII: Action for Corrective Action | EPA, FDEP | Dismissed with prejudice. |

In addition, Plaintiff must allege specific facts as to each Defendant's acts and omissions that support each claim, and include only the Defendants against whom he has a legitimate, legally cognizable claim. All claims against FDEP, FDEP-Waste, FDEP-Counsel, FDEP-SE, and EPA are dismissed with prejudice, so Plaintiff may not assert any future claims against those Defendants. Of the claims that are dismissed without prejudice as to any individual FDEP Defendants, Plaintiff must allege specific facts that identify the specific constitutional right that was violated, facts that support the violation, which Defendant committed the violation and in what specific manner, and how the violation fell outside the scope of the Defendant's duties.

While the Court must treat a pro se plaintiff's pleadings liberally, Plaintiff has already had one opportunity to amend his complaint, has received detailed analysis from the Court (and from the Defendants' arguments in their Motions to Dismiss) regarding his Amended Complaint, and now has the benefit of the Court's review of his proposed SAC. Plaintiff is reminded that, as a pro se party, he is still bound by the Federal Rules of Civil Procedure and expected to adhere to them. In particular, the Court directs Plaintiff to Federal Rule of Civil Procedure 11(b) and warns Plaintiff

that by filing a second amended complaint, he is certifying to the Court that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)-(3).

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The FDEP Defendants' Motion to Dismiss Plaintiff's Amended Complaint, [DE 26], is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** insofar as all claims against the FDEP Defendants are dismissed, but **DENIED** insofar as some claims are dismissed with prejudice and some claims are dismissed without prejudice.

2. Defendant Stark's Motion to Dismiss Plaintiff's Amended Complaint, [DE 54], is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** insofar as all claims against Defendant Stark are dismissed, but **DENIED** insofar as some claims are dismissed with prejudice and some claims are dismissed without prejudice.

3. Arcadis' Motion to Dismiss Plaintiff's Amended Complaint, [DE 57], is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** insofar as all claims against Defendant Arcadis are dismissed, but **DENIED** insofar as some claims are dismissed with prejudice and some claims are dismissed without prejudice.

4. Earth Tech's Motion to Dismiss Plaintiff's Amended Complaint, [DE 62], is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** insofar as all claims against Defendant Earth Tech are dismissed, but **DENIED** insofar as some claims are dismissed with prejudice and some claims are dismissed without prejudice.

5. Counts I, II, III, V, VI, XI, XII, and XIII are **DISMISSED WITH PREJUDICE**.

6. All claims asserted in the Amended Complaint against The Florida Department of Environmental Protection, the Florida Department of Environmental Protection Waste Site Clean Up Section, the Florida Department of Environmental Protection Office of General Counsel, and the Florida Department of Environmental Protection of the Southeast District are **DISMISSED WITH PREJUDICE**.

7. All remaining claims in the Amended Complaint are **DISMISSED WITHOUT PREJUDICE** for Plaintiff to file a second amended complaint. Plaintiff shall file his second amended complaint within 14 days of the date of this Order, and Defendants shall file a responsive pleading or motion within 14 days of the filing of the second amended complaint.

8. Arcadis' Motion to Strike, [DE 58], is **GRANTED**.

9. Plaintiff's Motion for Extension to Respond to the Motions to Dismiss, [DE 67], is **DENIED AS MOOT**, as Plaintiff already filed his Response, [DE 68], and the Court has considered it.

10. Plaintiff's Motion for Leave to Amend His Amended Complaint, [DE 73], is **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 17th day of May, 2023.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record